McNay v. Stratton.

SAMUEL H. McNAY

v.

DANIEL G. STRATTON.

1.    STATEMENT —FALSE IMPRISONMENT— SELF-DEFENSE.— Appellant brought suit for false imprisonment. Appellee pleaded that he did the act in necessary self-defense. It appears that appellee rode to appellant's house, found appellant at work in a corn crib, and drew a revolver, threatening to keep appellee in the crib till he was as cold as the grave, unless he would answer certain questions propounded to him; fired at him once, and actually

kept him in the crib for over an hour, and until appellant procured a revolver. and appellee was forced to retire. *Held*, that the evidence failed to support appellee's plea of self-defense, and the instructions of the court upon that point were erroneous.

2. INSTRUCTIONS—RULE AS TO.—Instructions should be drawn with reference to the evidence, and in such a manner that the jury may clearly understand what the issues are, and what the law is when applied to the facts.

3. TRESPASS—DAMAGES.—Every trespass gives a cause of action for at least nominal damages. If the defendant is found guilty, it is not necessary that actual damages should be proven, in order that vindictive or exemplary damages may be given.

4. EXEMPLARY DAMAGES.—The giving of exemplary damages is in the discretion of the jury, and may be allowed either where malice, violence, oppression, or wanton recklessness mingle in the controversy, or where the act complained of partakes of a criminal or wanton nature.

5. WHEN ACTUAL DAMAGE MUST BE SHOWN.—In suits for damages under the dram-shop act, it is necessary to prove actual damages before exemplary damages can be awarded, but this is for the reason that the statute allows such damages only when actual damage is shown.

6. JURY NOT COMPELLED TO GIVE EXEMPLARY DAMAGES.—The jury may give exemplary damages in their discretion, but they are not compelled to do so.

APPEAL from the Circuit Court of Henry county; the Hon. JOHN J. GLENN, Judge, presiding. Opinion filed November 2, 1881.

Mr. C. C. WILSON, for appellant.

Messrs. SHEPARD & MARSTON, for appellee; that vindictive damages can only follow upon actual damages, cited T. P. & W. R. R. Co. v. Patterson, 63 Ill. 304; Chicago v. Martin, 49 Ill. 241; Kennedy v. N. Mo. R. R. Co. 36 Mo. 351.

Damages should be only compensatory: Fay v. Parker, 16 Am. Rep. 270.

Vindictive damages cannot be allowed unless there is malice: Pierce v. Millay, 44 Ill. 189; Hawk v. Ridgway, 33 Ill. 473; Donnelly v. Harris, 41 Ill. 126; Chicago v. Martin, 49 Ill. 241; T. P. & W. R. R. Co. v. Patterson, 63 Ill. 304; Williams v. Reil, 20 Ill. 147; Sedgwick on Damages, 38.

The evidence was conflicting, and it was the especial province of the jury to reconcile it: Chapman v. Burt, 77 Ill. 337; Edgman v. Ashelby, 76 Ill. 161; Kightlinger v. Egan, 75 Ill.

141; Neustadt v. Hall, 58 Ill. 172; Ellis v. Locke, 2 Gilm. 459;
O'Reily v. Fitzgerald, 40 Ill. 310.

A new trial will not be granted unless the verdict is clearly
against the evidence: C. & R. I. R. R. Co. v. Hutchins, 34 Ill.
108; C. & R. I. R. R. Co. v. McKean, 40 Ill. 218; De Forest
Oder, 42 Ill. 500; C. & N. W. R. R. Co. v. Dement, 44 Ill.
74; C. B. & Q. R. R. Co. v. Van Patten, 64 Ill. 510.

LACEY, J.    The appellant brought suit in an action of tres-
pass for false imprisonment against appellee.    It appears from
the evidence that on the 30th day of October, A. D. 1879, the
appellee came to the corn crib of the former while he was in
his crib throwing back corn to make room for more.    He was
riding on a pony and was armed with a loaded revolver. ‗ The
west side of the crib was on the east line of the highway, and
the house of appellant, a few rods off, was on the west side of
the road.    The crib was filled with some ten feet high of corn,
nearly to the top, and was covered with what is called a shed
roof, with an opening along the west line of the crib, just un-
der the roof, of about two feet wide, facing the road.    The
appellee coming along the highway on the horse, stopped in
front of the crib and demanded of appellant to state whether
he had made certain derogatory remarks concerning the form-
er's family, but appellant refused to answer.

The appellee took out his revolver and had it hanging by his
side, when appellant called for his wife to bring his revolver
from the house.    Appellant kept urging his wife to shoot, but
she did not, and when appellant, who was unarmed, made an
attempt to get out of the crib, appellee ordered him not to get
out, and having already dismounted from his horse, drew his
revolver and fired at him while he was in the crib, the ball
striking his arm, bruising it badly, but not breaking the
skin.    At this juncture appellant dug a trench in the corn in
the middle of ʰ   crib, throwing the corn up on each side
against the be  ds and got down in the excavation out of
sight, for the pui pose of being protected from the shots from
appellant's revolver.    Appellee still stood guard with his re-
volver, keeping appellant from coming out of the crib.    At

this time some men of the neighborhood came up, whom appellant besought to take appellee away, but they would not interfere. The wife of appellant went some 80 rods after one Stackhouse, a man who was working in the field, being gone fifteen or twenty minutes, and returned with the man, but he did nothing.

The appellee kept appellant confined in the crib from an hour to an hour and a half, refusing to allow him to come down until he should answer his questions.

About the close of the affray, while attention was directed from the wife of appellant she threw his revolver into the crib, when he seized it and raising up fired it at appellee who also fired at appellant at about the same time. The appellee was wounded in the wrist and appellant not touched.

Then a second shot was fired by appellant at appellee, he still standing close to the crib with his revolver in hand, appellee attempting to return the fire. The last shot by appellant wounded appellee in the arm and disabled him. The bystanders then interfered and the affray ended. This in brief, is the case. The cause of action was for an assault as well as unlawful imprisonment.

If the plaintiff could make out either charge the cause of action would be complete.

The appellee justified on the ground that the assault was made in the necessary self-defense of the life of appellee, or to prevent great bodily harm, and that the imprisonment of the appellant in the corn crib for an hour to an hour and a half was also in necessary self-defense. Without going into a general discussion of the evidence we have come to the conclusion that it does not sustain the verdict, more especially on the charge of false imprisonment. After the appellee had placed himself before the appellant's crib with a revolver in his hand, and demanded to be told whether appellant had made certain slanderous statements in regard to the former's family, the difficulty commenced, and the appellee fired at appellant; then the latter hid himself in the corn. From this time for at least an hour, the appellee maintained his position before the crib, refusing to allow the appellant to come out until he had answered

McNay v. Stratton.

his questions.  For a considerable portion of this time the appellant's wife, who had his revolver with her, was absent.  She went some quarter of a mile away to bring Stockhouse, who was working in the field, to get him to remove the appellee from before the crib, so that her husband could get out of his prison.

During the time she was gone, appellant had no weapons, and two or three other men were standing by who had been besought in vain to take appellee away.  The appellee stood by, the only man who had any arms, refusing to allow appellant to escape from the crib.

It seems to us clear that under such circumstances no reasonable man would have apprehended that the danger to appellee was so urgent and pressing that he would have been compelled, for fear of losing his own life or receiving great bodily harm, to keep appellant in prison.  There could have been no reasonable belief that the danger was so great that it was absolutely necessary to continue the imprisonment in order to save his own life, or prevent his receiving great bodily harm (Chap. 38, Sec. 149, R. S.).

Appellee could have put away his revolver and retired in safety.  Instead of doing so, he remained at his station, declaring that appellant should never come down until he made answer to his questions.  There was evidence tending to show that appellee was the aggressor; if he was, and the jury so found, before he could justify on the ground of self defense he should have in good faith declined any further contest.  The 6th and 7th instructions for defendant should under the evidence have been guarded in this particular.

The 6th instruction given for defendant tells the jury that " although you may believe from the evidence that the defendant deprived the plaintiff of his liberty by forcibly keeping him in a corn-crib for a time against his will; yet, if you further believe from the evidence that the action and language of the plaintiff at the time was such as to raise a reasonable and well grounded apprehension that he was actually about to suffer great bodily harm at the hands of the plaintiff, and acting in good faith under such apprehension he con-

fined and deprived of his liberty the plaintiff, so far as to him seemed necessary for his own self defense, you will find him not guilty."

This instruction requires the belief of danger to appellee to arise from "the language and actions of the appellant alone, and only authorizes the jury to consider such actions and language in determining this question; whereas, the jury should have been told that such reasonable belief of danger must arise from a full and fair consideration of all the facts and circumstances surrounding the occurrence detailed in the evidence as well as the language and actions of appellee. The language and actions of appellant might have been ever so menacing, yet when taken into consideration with all the other facts, no reasonable man would have believed there was any urgent and pressing danger, requiring imprisonment for an hour or more. The jury are also told that if such reasonable apprehension of danger existed, then the appellee might deprive appellant of his liberty, "so far as to him seemed necessary for his own self defense." This is error.

The imprisonment to prevent such bodily harm should only have been such as would be deemed reasonable and necessary by an ordinarily prudent man under the circumstances.

The appellee might have supposed it was necessary to continue the imprisonment for an hour and a half, long after all reasonable danger had passed, if it ever existed. The jury should have also been told that such reasonable danger should have existed during the whole time of the imprisonment.

The 7th instruction, attempting to state a general propsition of law, appears to assume that appellee was threatened with danger, and in particularizing the acts, threats and conduct of the appellant, without calling the jury's attention to the other evidence and the facts and circumstances surrounding the transaction bearing on the question of reasonable apprehension of danger, the instruction is erroneous.

The instructions should be drawn in reference to the evidence, and in such a manner that the jury may clearly understand what the issues are, and what the law is when applied to the facts. In cases of this kind where the facts justify, the

law should give a sure and adequate remedy, "that the public tranquility may be preserved by saving the necessity to a resort to personal violence." If appellant had slandered the family of the appellee, he or they had an adequate remedy at law, and should have pursued that alone.

In attempting to take the law into his own hands, he put in great peril the life of himself as well as that of the appellant, disturbed the good order of society, and interrupted the peaceful sway of the law, to which all should submit. The giving the 9th instruction for appellee we regard as an error. The jury are told that punitive, vindictive or exemplary damages could not be allowed unless appellant had proved actual damages, and that unless the jury believe from the evidence that the appellant had sustained actual damages, then he could not recover, and they should find defendant not guilty.

Every trespass gives a cause of action for at least nominal damages. If the defendant is found guilty it is not necessary that actual damages should be proven, that vindictive or exemplary damages should be given. The giving of exemplary damages is in the discretion of the jury, and may be allowed either where " malice, violence, oppression or wanton recklessness, mingle in the controversy, or where the act complained of partakes of a criminal or wanton nature, else the amount sought to be recovered must be confined to compensation. T. P. & W. R. R. Co. v. Patterson, 63 Ill. 304; Alcorn v. Mitchell, Ibid, 553.

In cases of suits for damages under the Dram Shop Act, it is necessary to prove actual damages before exemplary damages can be awarded; but this is for the reason that the statute only allows exemplary damages in case actual damages are proven, as it is construed by the courts. Freese v. Tripp, 70 Ill. 496; Reed v. Horn, 73 Ill. 596, and cases cited. But this rule has no application to cases of trespass generally. And if there is a lack of malice, but the assault is without considerable provocation, and of a gross, wanton and outrageous character, then the plaintiff may recover exemplary damages. Drohn v. Brewer, 77 Ill. 280.

The 11th instruction asked for by appellant, we think, was

properly refused, for the reason that it made it obligatory on the jury to assess exemplary damages. In their discretion they may do so, but are not compelled.

We think the case ought to be submitted to another jury. The judgment is therefore reversed and the cause remanded.

Reversed and remanded.

PILLSBURY, J. I fully concur with my brother Lacey in his criticisms upon the verdict and the instructions, and think he would be justified in going much further.

Personally, I do not think that there is the first element of self-defense in the case. This appellee saw his neighbor in a position, where he could be taken at a disadvantage, and with pistol in hand demanded that the appellant should answer certain questions, and when requested to go away swore he would keep the appellant there until he was as cold as the grave. Upon the appellant attempting to come out of the crib, the appellee shot at him, and the bullet went through the clothing of appellant, and bruised his arm.

After the shot was fired the appellant hid himself in the corn, and his wife went after the hired hand, and was gone some fifteen minutes. It requires a great amount of credulity to believe that all this time the appellee was the one really imprisoned in the highway, within a few feet of the crib. There is nothing in this defense. It is another case where the sacred right of self defense is made use of to defeat right and justice. Every verdict like this is an additional reason for carrying deadly weapons for self protection. In my opinion there was not evidence sufficient in the case upon which to base an instruction submitting the question of self-defense to the jury.

The assault upon the appellant was an aggravated one, without a single mitigating circumstance. If the appellant when he obtained his revolver had killed the appellee, I think he could have appealed to the law of self defense, with far greater confidence, than can the appellee, under the facts of this case.