## KENNEDY BROS. ET AL.

### v.

## HANNAH SULLIVAN.

*Intoxicating Liquors—Action against Saloon Keepers for Selling to Intoxicated Person—Sufficiency of Evidence . to Support Verdict—Instructions—Agency—Exemplary Damages—Statute—Improper Remark of Counsel to Jury—Withdrawal of.*

1.   It is the exclusive province of a jury to determine, in the first instance, where the truth is, in conflicting and contradictory statements of witnesses, and courts will not substitute their judgment for that of the jury upon questions of fact unless they can clearly see that the jury has erred in its findings, or that manifest oppression or injustice will follow.

2.   If any person, whether regularly employed as a clerk, servant, agent or not, goes into a saloon and sells or gives away intoxicating liquors with the knowledge and consent of its owner or keeper, or with his subsequent ratification thereof, the owner or keeper must be held responsible for these acts, and such person will be treated as his agent in making these sales or gifts.

3.   Upon the evidence presented in the case at bar it can not be said to have been error for the court to have given an instruction which permitted the jury to find exemplary damages against the defendants.

4.   Where the proof is sufficient to sustain the verdict, supposing only actual damages to have been legally recoverable, the judgment will not be set aside although the instruction permitting the jury to find exemplary damages was not proper.

5.   A judgment will not be reversed because of an improper remark of counsel in addressing the jury, which was promptly and frankly withdrawn upon objection made. where this court can not see that any injury resulted to the complaining party.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of McHenry County; the Hon. CHARLES KELLUM, Judge, presiding.

Messrs. RUBENS & MOTT, M. L. JOSLYN and BARNES & SMILEY, for appellants.

There was no evidence of a sale or gift of intoxicating liquors by appellants to Cornelius Sullivan. See Siegel v. People, 106 Ill. 89; Hansberg v. People, 120 Ill. 21.

The evidence fails to support the claim that Martin, at the time in question, was the agent of McGee. It shows that at particular times McGee requested Martin to attend to his place of business; that Martin did so. At the expiration of the particular time during which Martin was requested to act as agent, the agency terminated. Wilder v. Branch, 12 Ill. App. 364. And an agency created for a limited time and given purpose can not be extended by implication. Manf. National Bank v. Barnes, 65 Ill. 69.

The ground upon which the courts have held a person liable for the act of another, where similar acts have previously been ratified and confirmed, is the public policy of preventing frauds upon innocent persons and the encouragement of confidence in dealings with agents. If a person is held out to third persons or to the public at large as having general authority to act for and to bind another in a particular business, and others, relying upon such apparent authority, deal with him, it would be the height of injustice and lead to the grossest frauds to permit the principal to repudiate the agency. Story on Agency, Sec. 127, but see Sec. 480.

But it must clearly appear that the party dealing with the alleged agent, relied *at the time*, upon his having the authority to act for his supposed principal, because of similar acts having been ratified, and believed that in dealing with him as agent the principal was bound; otherwise, the principal can show that no agency existed, and, if none existed in fact, the principal is not liable. Rawson v. Curtis, 19 Ill. 474, 475; Maxey v. Heckethorn, 44 Ill. 437.

In the case at bar no pretense is made that any reliance was made upon Martin's being the agent of McGee at the time of the procuring of liquor in McGee's saloon, and the fact that he was employed elsewhere and went in there at the request of Sullivan to have a drink would rebut any such presumption. McGee's language at the time does not show a ratification of the particular act of Martin. It does not appear what his language referred to.

The plaintiff's first instruction is fatally defective in that it tells the jury to "assess the plaintiff's damages for such sum

as they think, from the evidence, she ought to recover." This would warrant the jury in awarding to the plaintiff exemplary damages, if they saw fit so to do. But *this was not a case in which such damages could be properly awarded*, inasmuch as no aggravating circumstances of any kind whatever are shown as against either McGee or the Kennedy Bros. Meidel v. Anthis, 71 Ill. 243; Killerman v. Arnold, 71 Ill. 634; Kadgin v. Miller, 13 Ill. App. 474; Holmes v. Nooe, 15 Ill. App. 164.

The plaintiff was entitled to recover if, at all, only such damages as she had sustained and not such as the jury might think she ought to recover. Keightlinger v. Egan, 65 Ill. 238; Heimsoth v. Anderson, 16 Ill. App. 152.

The verdict of the jury is excessive.

There is not a word of evidence as to how much Sullivan earned from his threshing machine or from his farm, or what he did with his money, and nothing to show that the plaintiff has lost anything in her means of support; she still is running the threshing machine by hired help, and does not claim that she is working harder or has less than when Sullivan was alive. The evidence does prove that Sullivan was running behind each year about as much as it would cost to support his family, running that much in debt, and that for several years he was a drinking man, drinking to excess, and probably consumed in this manner as much as he earned. Our Supreme Court has decided again and again that the damage to the wife's means of support must be shown by the evidence before a recovery can be had.

"This statute applies, in terms, to her means of support, and she must show they have been diminished in some degree and to some extent to enable her to recover damages. This is not to be left to conjecture. Into that vast field the jury is not permitted to roam. If they were, no man's property would be worth having." Meidel v. Anthis, 71 Ill. 241; Keedy v. Howe, 72 Ill. 137; Kellerman v. Arnold, 71 Ill. 633.

In view of this evidence and the shiftless character of plaintiff's husband, as proven by plaintiff and her witness, we submit that the verdict of $1,800 is not only excessive, but is wholly unsustained by any evidence in the case, and is due to

Kennedy Bros. v. Sullivan.

the awarding of exemplary damages or prejudice in the minds of the jury caused by improper argument of counsel.

In the closing argument to the jury, counsel for plaintiff stated:

"A part of this Daly mortgage belongs to these Kennedys, where Sullivan had made his headquarters for years."

Defendants objected to this statement and took an exception, whereupon counsel for plaintiff further stated: "It was not in evidence and I withdraw the remark, and do not wish you to consider it in making up your verdict."

This remark tended strongly to prejudice the jury against the Kennedys, and the facts stated would not have been admissible in evidence, if offered. See Hennies v. Vogel, 87 Ill. 244; C. & A. R. R. Co. v. Bragonier, 13 Ill. App. 469; City of Elgin v. Eaton, 2 Ill. App. 93; Herkimer v. Shea, 21 Ill. App. 87; Chase v. Chicago, 20 Ill. App. 278; Union Insurance Co. v. Chever, 36 O. St. 201; Hoxie v. Home Ins. Co., 33 Conn. 471.

The fact that counsel for appellee withdrew the remark and stated to the jury not to consider it in making up their verdict does not cure the error. Wolfe v. Minnis, 74 Ala. 386; Hackett v. Smelsey, 77 Ill. 109.

Counsel for plaintiff did not and could not remove from the mind of the jury the impression which he had created by the statement that Sullivan had made Kennedy's saloon his headquarters for years, and that the Kennedys owned the Daly mortgage, and we submit that in a closely contested trial of this character, this being the fourth trial, in which every question of fact was being closely controverted, any statement of counsel unwarranted by the evidence, tending to prejudice the minds of the jury for either party, and thereby to influence the finding of the jury upon the questions of fact involved, is sufficient ground for a reversal.

Messrs. John B. Lyon, C. H. Donnelly and O. H. Gilmore, for appellee.

C. B. Smith, J. This was an action on the case brought by

appellee against appellants, and a number of others, saloon keepers, charging them with having sold intoxicating liquors to her husband, Cornelius Sullivan, and causing his intoxication, and that while so intoxicated, and by reason thereof he was killed. The several defendants each pleaded the general issue.

Before a trial was reached one of the Kennedy Brothers died, and the suit was dismissed as to Stout, Kapler, Furer, Muldoon and McManus. There have been four trials of the case in the Circuit Court. At the May term, 1887, the jury found Herdklotz not guilty, and disagreed as to the other defendants—now appellants. Another trial was had at the September term, 1887, and the jury again failed to agree and were discharged. The case was again tried at the January term, 1888, and another disagreement followed and the jury again discharged. Another trial was had at the January term, 1889, resulting in a verdict for appellee for the sum of $1,800. A motion for a new trial by defendants was overruled by the court, and judgment entered upon the verdict, to which appellants excepted, and they now bring the record before us on appeal, and ask for a reversal of the judgment.

While many errors are assigned, only the following are relied upon and brought to our attention in the argument:

1.   That the verdict is against the evidence.

2.   That the court erred in giving plaintiff's instructions.

3.   That the damages are excessive.

4.   Improper remarks made by counsel for appellee to the jury in the progress of the argument.

It appears from this record that Cornelius Sullivan was a farmer living in McHenry county—a married man, the head of a family and living with them, and carrying on a farm of 120 acres, and during a part of the season running a threshing machine. He was at the time of his death thirty-five years of age, and described by all the witnesses as a strong, robust, healthy man, with industrious and frugal habits save alone his appetite for intoxicating liquors. He provided well for his family and his wife swears they never wanted for anything. He had never been sick since he was married. He left sur-

viving him his wife and two children, one seven and the other three years of age, all depending entirely on his labor in his lifetime for support. The wife had no means of support of her own.

On Saturday afternoon, on the 17th day of April, 1886, Cornelius Sullivan left his home and his family, a sober, well and healthy man, full of life and vigor, driving his two-horse team to go to Woodstock to transact his business. On the next morning—Sunday—he was carried home to his family a lifeless corpse.

Appellants, Kennedy Brothers, and John McGee, were keeping saloons in the city of Woodstock on Saturday, April 17, 1886, and had been for some time, perhaps years before that, and were engaged in the business of selling intoxicating liquors. Upon Sullivan's arrival at Woodstock the first we hear of him and the first place he is found is at the saloon of John McGee drinking "beer" in company with others. At the time he took this first drink of beer at McGee's saloon McGee himself was not in, but Byron Martin, who was in the habit of waiting on customers in the saloon when McGee was out—with McGee's knowledge and consent—saw Sullivan and others go into the saloon, and he went in after them and gave them what they severally called for, and just as they had finished drinking and were walking out, McGee came in, and Martin told him he owed him twenty or twenty-five cents, and McGee responded "all right." Shortly after going out of McGee's saloon, Sullivan was seen in at Kennedy Brothers' saloon, drinking "beer," treating others and being himself treated. From that time until about ten o'clock at night many witnesses testify to seeing him in both Kennedy's and McGee's saloon, drinking something at the bar—most of the witnesses testifying that they were unable to tell just what he drank, but took it to be some kind of beer. At about ten o'clock in the evening he was in Kennedy's saloon boisterous and drunk. A little before that he was in at McGee's saloon where he requested McGee to let him have a bottle of whisky. Just as this order was made, the witness who heard it stepped out of the saloon, leaving Sullivan there with McGee. In a very

short space of time Sullivan came out and as Sullivan and this
witness walked away Sullivan drew a pint bottle from his
pocket full of whisky and they each drank from it. This same
bottle of whisky about half full was found in Sullivan's pocket
the next morning when he was found dead in the road. Wit-
ness Grove swears he saw him at both saloons the night he
was killed and drank beer with him at McGee's. Witness
Udell, the sheriff, was with him in McGee's about six or seven
o'clock that evening and drank beer with him. He thought it
was lager beer. Dr. Cook saw him the night of his death
after nine o'clock in Kennedy's saloon. He invited everybody
in the room to drink with him. He was boisterous and nobody
paid any attention to his invitation and he then said he could
beat any man at the game of "45." He was not sober. He
asked William Kennedy for some whisky but he (Kennedy)
told him he had enough, but he (Kennedy) would give him
some beer; but Sullivan said, " Go to hell with your beer; I
don't want it." He broke up one game of " 45." " I did not
see Sullivan drink anything that evening. He was refused
when he called for anything over the bar. I saw him after
that night trying to get into his buggy. Both the Kennedys
were in the saloon that night. I am a regular physician;
knew Sullivan before. He was about six feet high and weighed
about 180 pounds ; a strong, vigorous man and healthy." Wit-
ness McCarthy swears that he drank beer with Sullivan about
six or seven o'clock Saturday evening, either at McGee's or
Muldoon's. Witness Thomas swears that he saw Sullivan
drink beer at Kennedy's the night he was killed, and that
Al Kennedy gave it to him. Witness Brush swears that he saw
Sullivan drinking beer at Kennedy's that night and that he
saw William Kennedy give it to him. William Lindley swears
that on that Saturday night about nine or ten o'clock he and
others were in McGee's saloon and that while there Sullivan
came in and was given a glass of beer by Byron Martin, the
same man who waited on him and others in the afternoon
when he first came to town, in McGee's saloon, and that
McGee was then in the saloon himself, and that after Sullivan
drank the beer he then asked McGee himself for a bottle of

whisky; that the witness then turned and walked out behind the screens; that he heard nothing said by McGee or Sullivan but that he waited but a minute and Sullivan came out also, and that as they walked down the street Sullivan drew a full bottle of whisky from his pocket and that both witness and Sullivan drank twice from this bottle of whisky while on the street. Witness Sherwood swears that between eleven and twelve o'clock that night in front of his hotel in Woodstock he saw Sullivan in his buggy reeling drunk, and that some person not known to him was on the ground holding the lines, and that William Kennedy was holding the horses by the bits. This was the last time any one saw Sullivan alive. Next morning about eight o'clock he was found some distance from Woodstock in the road, dead. His horses had wandered from the middle of the road to the roadside, where one side of his buggy was run upon a bank, thereby causing it to overturn, throwing Sullivan out, and the iron arm of the buggy top falling directly across his throat in such manner as to choke him to death. The fatal bottle of whisky, half empty, was found in his pocket. When he was found his body was cold and stiff, indicating, as the physician said, that he had been dead several hours. The foregoing was the substance of all the evidence for appellee.

On the part of appellants John McGee testified on his own behalf, and denied selling Sullivan any intoxicating liquor on that day or night and denied authorizing Martin to sell him any. He also denied selling him the bottle of whisky. William Kennedy on his own behalf denied selling Sullivan intoxicating liquor on that afternoon or evening. In addition to this testimony some six or eight witnesses testify to being in at Kennedy's about nine or ten o'clock engaged in playing cards, when Sullivan came in there in a boisterous manner, and that William Kennedy refused to let him have any liquor. Albert Kennedy, although charged under oath by some of appellee's witnesses with selling Sullivan beer on that night, did not take the stand and deny it. Some of appellant's witnesses also testify to seeing Sullivan getting beer and whisky at other saloons on that night. Under this state of the evi-

dence counsel for appellant insist with great earnestness that there is no evidence to support the verdict, much less a preponderance of it. They insist that even if it be conceded that the proof shows that defendants sold "beer" to Sullivan, still there is no proof to show that such beer was an intoxicating liquor in fact, or such liquor as the law treats as intoxicating liquor.

We can not concur in this view. It is true there was a conflict in the evidence as to whether appellants sold Sullivan liquor. Two of the defendants directly deny making him any sale or gifts at all of anything, and they are supported by several other witnesses, who did not see any sales made, and some of whom heard at least one of the Kennedys refuse to sell him beer or whisky; but this testimony is met by the direct and positive testimony of a number of witnesses who swear not only that these defendants sold Sullivan beer, and that they drank with him on several different occasions on that afternoon and night at both of these saloons, but that at McGee's he bought a bottle of whisky.

In order to sustain this verdict it is by no means necessary that any witness should swear directly that the beer was lager beer or that it was intoxicating liquor in order to justify the jury in believing it was such. The result that follows the drinking was much more satisfactory proof of the character of the drink than the opinion of any witness, as to the name or quantity of what was given him. That Sullivan did drink beer at both of these saloons repeatedly that afternoon and night we think is abundantly proven by a number of witnesses, if the jury were willing to believe them, and that his intoxication quickly followed is not denied by any one, and that he was reeling drunk and wholly unable to take care of himself at eleven o'clock is abundantly proven. One of the Kennedys himself, seeing his helpless state, went with him to his buggy and helped him in and started him home, alone in the dead hours of the night with his team, utterly helpless. Whence this drunkenness? The learned counsel for appellants insist there is no proof of any sale of whisky. If this be so, then it is inevitable that the unnamed and foaming beer held

in its rich coloring the fatal alcohol that stupified the brain and dethroned the reason of its unhappy victim and lured him to an untimely and violent death.

It was the exclusive province of the jury in the first instance to determine where the truth was in the conflicting and contradictory statements of the various witnesses who testified. Their opportunities were infinitely better than ours for knowing who was testifying to the truth. If they believed the witnesses for the appellee, then there was abundant evidence to support the verdict. Courts will not and ought not, substitute their judgment for that of the jury upon questions of fact, unless they can clearly see that the jury has erred in its finding or that manifest oppression or injustice will follow. Wiggins Ferry Co. v. Higgins, 72 Ill. 514; C., B. & Q. R. R. Co. v. Lee, 37 Ill. 454.

The language of the above case has been repeated in several subsequent cases much stronger than that held in the above case. We are of the opinion that the verdict is sustained by the evidence in this record.

The second assignment of error is that the court erred in giving appellee's instructions.

The first instruction given for plaintiff was as follows:

" On the part of the plaintiff the jury are instructed that if they believe from the evidence that the plaintiff was the wife, and is now the widow, of Cornelius Sullivan, deceased, and that the said defendants or any or either of them, or the servants, employes, or any person acting for said defendants, or any or either of them, did, on the 17th day of April, A. D. 1886, sell or give to the said Cornelius Sullivan any lager beer or any other intoxicating liquor, and thereby in whole or in part caused the intoxication of the said Cornelius Sullivan, and the said Cornelius Sullivan, while under the influence of such intoxication, and in consequence thereof, lost his life in manner and form charged in the declaration, and that the plaintiff was thereby damaged in her means of support, then the jury should find the defendants, or such of them as are proven to have contributed to such intoxication in whole or in part, guilty, and assess the plaintiff's damages at such sum

as they think from the evidence she ought to recover, not to exceed ten thousand dollars."

It is first objected that this instruction is bad because it submits to the jury to decide whether appellants sold the deceased, Sullivan, intoxicating liquor without any evidence to support that theory. This objection has been disposed of by what has been heretofore said. It is again objected that the instruction is bad under the facts in the case in using the expression that the defendants or any or either of them would be liable for sales made by themselves or "*any person acting for them,*" which could only refer to the sales made by Martin for McGee, without being his regular clerk, or directly authorized to make the sales.

This position is equally untenable. If any person, whether regularly employed as a clerk, agent or servant, or not, goes into a saloon and sells or gives away intoxicating liquors with the knowledge and consent of the owner or keeper, or with his subsequent ratification thereof, the owner or keeper must be held responsible for these acts, and such person will be treated as his agent in making the sale or sales, or gifts, whether many or few. In this case the proof is clear that Martin was accustomed to go into McGee's saloon when he was absent and wait on customers, and this with McGee's knowledge and consent. In addition to this the proof is, he ratified the act of Martin in selling Sullivan and others the liquor on the day preceding his death. When he was informed of the sale and that Martin had the money for him, he said "all right." He saw the men in his saloon and saw Martin in there and it is not doubtful that he must have known what they were all in there for.

It is still further urged that this instruction is bad in saying to the jury, "that they might assess the plaintiff's damages at such sum as they think from the evidence she ought to have, not to exceed ten thousand dollars," in case the jury should believe from the evidence she was entitled to recover. It is insisted that this instruction is broad enough to allow the jury to give exemplary damages if they desired, and that there was no evidence in the case to justify the allowance

of exemplary damages. It may be conceded that the instruc-tion, while not in so many words telling the jury that if the evidence justified it they might award exemplary dam-ages, still the jury, not being directed not to assess such damages, might do so under the general language of the instruction. The statute expressly allows the assessment of exemplary damages under certain circumstances, which, it has been determined by the courts, are in cases where the evidence shows any wilful, wanton violation of the law or disregard of the rights of others, or any oppression or reck-less conduct (and whether there have been in the particular case any wanton or wilful acts tending to show a wilful dis-regard of the rights of others or of the law is always in the first instance a question of fact for the jury), and when the jury finds any such wanton, wilful or oppressive conduct toward the injured party or deliberate and wilful violation of the law under the evidence, then the jury may, under such circumstances, in addition to the actual damages sus-tained, also assess exemplary damages. McNay v. Stratton, 9 Ill. App. 215; Wabash Ry. Co. v. Rector, 104 Ill. 296; Lowry v. Coster, 91 Ill. 182.

Does the proof in this case show such a wilful or wanton disregard of the right of Sullivan or his wife or children as to justify the jury in assessing exemplary damages? Whether it was or not was a question of fact for the jury. The instruction left them entirely free to determine that question under the evidence, as held in Wabash v. Rector, *supra*, and Penn. Co. v. Frana, *supra*.

Sullivan's wife testified on the trial, that for the last two years her husband had been a good deal addicted to drinking and frequently came home from town drunk. It appears also in the proof, that he was well known to these defendants, and it is not an unreasonable or unfair inference to draw, from the evidence in this case, that defendants, being saloon keepers, must have known his infirmity and habit of becom-ing intoxicated. But whether they knew it before that night or not, it is clear that they all knew he was drunk on that occasion, and it is equally clear, if plaintiff's witnesses are to

be believed, that they sold him some kind of intoxicating liquor after he became drunk and while he was going from one saloon to another asking for and obtaining liquor in defiance of the law prohibiting such sales, and in total disregard of the rights of Sullivan and his family. One of the Kennedys closes the night and its heartless chapter by sending this poor helpless victim of his greed out into the night and darkness, with his team, alone, seeing and knowing the man to be too drunk to take care of himself. It seems to us that, from this evidence, the jury might impose exemplary damages for wanton and wilful misconduct on the part of defendants, if they saw proper to do so, and that there was not error in leaving them at liberty to do so under the instruction.

But conceding now, that there was no evidence to justify the finding of exemplary damages and that the instruction was broad enough to allow such damages to be assessed, still we think no harm was done to appellants, since the verdict does not necessarily contain exemplary damages. The proof is uncontradicted that Sullivan was a man in the prime and vigor of life, in perfect health, stalwart and strong, an industrious hard-working man who made ample and generous provision for his wife and little children, in so much that they could say " they never wanted anything." Is such a life not worth $1,800 to a dependent wife and little children? If this instruction, then, was in that respect technically erroneous, it did appellants no harm and they can not complain. We think there is no reasonable ground for saying that the verdict contained anything more than compensatory damages. What the life of Sullivan was worth to his widow and family was a question of fact left to the jury under the instruction, and we can not say they are not justified in finding that such actual loss was equal to $1,800.

In the case of Wiggins Ferry Co. v. Higgins, *supra*, the same complaint was made, that the damages were excessive, and that punitive damages had been assessed; but the court say in reply to that objection, that "even if this is true it has worked appellant no injury, as we see from the evidence that only compensatory damages were assessed   *   *   *   and we never

reverse a judgment simply because an inaccurate instruction has been given when we can see that it has resulted in no injury to the party against whom it has been given." And to the same effect is Meyer v. Pfeiffer, 50 Ill. 485. In the case of Penn. Co. v. Frana, 112 Ill. 398, there was no evidence to sustain exemplary damages, but that instruction, as in this case, required the jury to find their verdict from the evidence, and the court held, even if the instruction was broad enough to allow the jury to find punitive damages, still, as there was no evidence to that effect, it would not be presumed the jury did so. We think there was no error in giving the first instruction.

Objections are also made to several other instructions given for appellee. We have carefully examined them all and the objections urged against them, and find the objections to be of a most unsubstantial and technical character. It would subserve no useful purpose to discuss them in detail. We think they are all substantially good and that they contain no prejudicial error to appellants.

Finally, it is urged that the judgment should be reversed on account of improper language used by counsel for appellee, in the argument before the jury. In the closing argument counsel for appellee said to the jury, "A part of this Daly mortgage belongs to these Kennedys, where Sullivan made his headquarters for years." Counsel for defendant objected to this language at once, and took an exception, and thereupon counsel for plaintiffs further said, "It was not in evidence and I withdraw the remark, and do not wish you to consider it in making up your verdict." While this remark of counsel was improper, still under the circumstances we can not see that defendants were prejudiced by it. It was promptly and frankly withdrawn and the jury requested to pay no attention to it. We assume the jury were men of ordinary intelligence and were willing to do their duty under their oaths, and try the case upon the evidence adduced, and not be influenced by remarks wholly foreign to the case dropped by counsel in the moment of excitement and the heat of an argument. When counsel promptly withdrew any erroneous statements on their attention being called to it, and requested the jury to disregard

it, the court will not regard such an error of sufficient magnitude to justify a reversal, unless the court can see that such improper argument has improperly influenced the jury. We think no such prejudicial result followed the use of the language complained of.

It is also urged that the damages are excessive. That assignment of errors has been considered when we were considering the instructions, and will not be further noticed.

After a careful and attentive consideration of this case, we have been unable to find any substantial error in the record. After four trials we should in any event hesitate to disturb the judgment except upon some substantial reason or ground affecting the justice or merits of the case, and failing to find such errors, and believing that substantial justice has been done, the judgment will be affirmed.

*Judgment affirmed.*