**BY–PROD CORPORATION,**
Plaintiff-Counter-Defendant-Appellee,

v.

**ARMEN–BERRY COMPANY,**
Defendant-Counter-Plaintiff-Appellant.

No. 81–1474.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1982.

Decided Jan. 26, 1982.

---

Pamela J. Kempin, Chadwell, Kayser, Ruggles, McGee & Hastings, Ltd., Chicago, Ill., for plaintiff-counter-defendant-appellee.

Belle Gordon, Isham, Lincoln & Beale, Chicago, Ill., for defendant-counter-plaintiff-appellant.

Before BAUER and POSNER, Circuit Judges, and MARKEY,* Chief Judge.

POSNER, Circuit Judge.

This case raises questions of federal counterclaim practice, pendent jurisdiction, and civil liability (federal and state) for "bugging" telephone conversations. It is an offshoot of a federal antitrust suit brought by By-Prod Corporation against the Armen-Berry Company. Both firms are processors of animal glands for sale to pharmaceutical manufacturers. The antitrust suit (which has not yet gone to trial) alleges that Armen-Berry and others conspired to divide the market for buying animal glands from slaughterhouses, to depress the prices they pay for the glands, and to suppress the competition of processors such as By-Prod who refused to join the conspiracy.

In the course of pretrial discovery it was discovered that during the period of the alleged conspiracy an officer of By-Prod named Schiff had tape recorded a telephone conversation that he had had with an employee of Armen-Berry named Arens. That event is the basis of the counterclaim, filed by Armen-Berry and naming both By-Prod

* Of the United States Court of Customs and Patent Appeals.

and Schiff as counterclaim defendants, that the district court below dismissed and that we are asked to reinstate. The counterclaim is in two counts. One alleges that the tape recording violated Title III of the Federal Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520; the other that it violated Article 14 of the Illinois Criminal Code, Ill.Rev.Stat., ch. 38, §§ 14–1 to 14–9. The counterclaim asks for both compensatory and punitive damages and (in the Title III count) a reasonable attorney's fee. The district court dismissed the Title III count on motion for summary judgment, holding that there was no possible factual basis for the claim that Schiff (and derivatively By-Prod) had violated Title III. The court then held that the Article 14 count was a permissive counterclaim and, as such, required an independent federal jurisdictional basis, which it lacked because although there was diversity of citizenship between the parties to the counterclaim it was a legal certainty that Armen-Berry could not prove that the amount in controversy exceeded $10,000. The court also declined to exercise its pendent jurisdiction, and therefore dismissed the Article 14 count for want of federal jurisdiction. Thus the entire counterclaim was dismissed, and this appeal followed.

■ A person not acting under color of state law may, without violating Title III of the Crime Control and Safe Streets Act, intercept a telephone call to which he is a party unless the purpose of the interception is to commit an act that is criminal or tortious under federal or state law, or "any other injurious act." 18 U.S.C. § 2511(2)(d). There is no question that Schiff, not acting under color of state law, intercepted a telephone call to which he was a party; whether he violated the statute thus depends on whether his purpose was criminal, tortious, or otherwise injurious. Schiff stated in deposition that his purpose in making the tape recording was to be sure that he had an accurate record of the conversation. The conversation was critical because in it, according to Schiff, Arens described the conspiracy which is attacked in By-Prod's antitrust suit against Armen-

Berry and invited Schiff to join it; and Schiff expects to testify to the content of the conversation (along with that of a prior, unrecorded conversation in which, says Schiff, Arens first mentioned the existence of the conspiracy) at the antitrust trial. But Schiff, besides having a tape recorder, also knows a form of shorthand; and he decided that the shorthand transcript of the telephone conversation which he had made while it was in progress was sufficiently accurate to make the tape recording unnecessary. So without ever listening to the tape he recorded over it and thus erased it. This is the only evidence that was before the district judge on the motion for summary judgment except for Arens' denial, in his deposition, that he had talked about any conspiracy in either phone conversation.

■ Though summary judgment was proper only if there was no genuine issue of material fact concerning Schiff's purpose in recording the conversation with Arens, we agree with the district court that this is the unusual case where an issue of intent can properly be resolved without a trial. Given Arens' emphatic denial that he discussed any conspiracy in either of his conversations with Schiff—a denial whose truth or falsity could not be determined by the district judge on the basis of deposition transcripts—we think there is a genuine issue, but not one of material fact, concerning Schiff's purpose in *erasing* the tape. He may have done it as he says because his shorthand transcript was adequate, or he may have done it because the transcript was fabricated and the tape recording would have exposed the fabrication. But the statute does not punish erasing a tape. So far as the interception—that is, the taping itself—is concerned, Schiff's testimony that he simply wanted to make sure he had an accurate record of a conversation that he hoped would produce evidence of an illegal conspiracy stands uncontradicted. A desire to make an accurate record of a conversation to which you are a party is a lawful purpose under the statute even if you want to use the recording in evidence. *Moore v. Telfon Communications Corp.*, 589 F.2d 959,

965–66 (9th Cir. 1978). It is inconceivable to us, as it was to the district judge, that Schiff, had he known in advance that the conversation would *not* produce an admission of unlawful activity by Armen-Berry, would nevertheless have recorded it. Maybe the conversation did not produce damaging admissions and he lied in his deposition in saying that it did. But he would not have recorded it unless he thought, at least before he hung up the phone, that it might produce useful admissions. We are unwilling to convert a statute designed to limit the recording of telephone calls into one that punishes people for erasing tape recordings that were lawful when made. And while it is even conceivable that Schiff if he had gotten the admissions he was hoping for would have used the recording to blackmail Armen-Berry rather than to bolster By-Prod's antitrust suit and that this was his real purpose in making the recording, no evidence of such an intent was presented below—and Armen-Berry had the burden of proving unlawful purpose.

■ We doubt anyway that a tape recording which was never used could form the basis for liability under section 2511(2)(d). It would be a dryly literal reading of the statute that found a violation because at the moment of pressing the "on" button a party to a conversation conceived an evil purpose though two seconds later he pressed the "off" button and promptly erased the two seconds of tape without even playing it back. A statute that provides for minimum damages of $1000 per violation must have more substantial objects in view than punishing evil purposes so divorced from any possibility of actual harm. We think it is the use of the interception with intent to harm rather than the fact of interception that is critical to liability, and there was no use of the interception here.

■ With the federal count in the counterclaim properly dismissed on the merits, as we hold it was, the remaining issue is whether the district judge had jurisdiction to decide the state-law (Article 14) count. If it was a compulsory counterclaim to By-Prod's antitrust suit he did, because a compulsory counterclaim requires no independent federal jurisdictional basis. A counterclaim is compulsory, according to Rule 13(a) of the Federal Rules of Civil Procedure, "if it arises out of the transaction or occurrence that is the subject matter" of the main suit. But this formula sets forth a conclusion rather than a test; we must look behind it to the purposes of making certain counterclaims compulsory and to the competing social purposes that might be frustrated if the rule were read too broadly. Cf. *Ball v. Connecticut Bank & Trust Co.*, 404 F.Supp. 1 (D.Conn.1975).

■ The principal purpose of making certain counterclaims compulsory is judicial economy. This purpose would not be well served by requiring that the state-law count in the present case be litigated as a counterclaim to the antitrust suit. We need not as judges ignore what is obvious to us as former practitioners—that the primary purpose of Armen-Berry's counterclaim is not to get damages but to make the jury in the underlying antitrust action think that the plaintiff was guilty of a Watergate-style tape erasure. (Armen-Berry's lawyer asked Schiff at his deposition, "You were aware of what has come to be known as the Watergate scandal, weren't you?") Because of the confusing Watergate aura that the counterclaim would have cast over the antitrust suit if tried with it, the district judge would, he said in his opinion dismissing the complaint, have ordered separate trials on the main suit and on the counterclaim even if he had retained the counterclaim. Therefore the principal judicial economy sought to be achieved by Rule 13(a)—avoiding multiple trials—could not have been achieved in this case. Moreover, a federal antitrust suit is typically unwieldy and this one, from what little we have gleaned of it from the papers before us on this appeal, is running true to form. To encumber it with a counterclaim based on a completely unrelated statute would not promote judicial economy. It is true that to try the state-law count in the counterclaim will require only a modest investment of

judicial and other litigation resources, since there are likely to be few if any witnesses besides Schiff and Arens. But that trial will be neither streamlined nor expedited if it is made the tail on a large multi-party antitrust donkey. Finally, we are reluctant to adopt a broad reading of Rule 13(a) in a case where deeming a counterclaim compulsory would bring into federal court a dispute over state law that could not (as we shall see) get into it in any other way.

■ We conclude, in the language of Rule 13(a), that the state-law count in Armen-Berry's counterclaim arose not out of the antitrust conspiracy that is the subject matter of the main suit but out of a telephone conversation that was a different transaction and occurrence from the conspiracy. That count, which is all that was left of the counterclaim after the federal-law count was properly dismissed on the merits, is a permissive rather than compulsory counterclaim to the antitrust suit.

As a permissive counterclaim it can still withstand dismissal on jurisdictional grounds if, but only if, it has an independent basis of federal jurisdiction. See, e.g., *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974). Since there is diversity of citizenship between the counterclaim plaintiff and defendants, the counterclaim is within the diversity jurisdiction if the amount in controversy exceeds $10,-000. Section 14–6 of the Illinois Criminal Code allows an injured party to recover both "actual damages" and "any punitive damages which may be awarded by the court or by a jury." From what we said earlier concerning the lack of any possible injury to Armen-Berry from the allegedly illegal interception, it is clear beyond any reasonable doubt that Armen-Berry could not obtain any actual damages, especially since, unlike the federal statute, the Illinois statute has no liquidated-damages provision. Thus the only question is whether Armen-Berry could possibly obtain at least $10,000 in punitive damages.

Section 14–6 makes the award of punitive damages for illegal interceptions discretionary rather than mandatory, and the legisla-ture presumably intended that the discretion of the court or jury would be controlled by the general principles of Illinois law governing punitive damages. It is unlikely that the legislature meant to leave the tribunal wholly at large, especially when the statute places no ceiling on the amount of punitive damages that may be awarded.

■ The law in Illinois apparently is that no punitive damages may be awarded in the absence of actual damages. See, e.g., *Florsheim v. Travelers Indemnity Co. of Illinois*, 75 Ill.App.3d 298, 309–10, 30 Ill.Dec. 876, 393 N.E.2d 1223, 1233 (1979). The principle was first announced, interestingly, in a case where, as in the present one, the underlying cause of action was based on statute rather than the common law. See *Freese v. Tripp*, 70 Ill. 496, 501 (1873). Therefore, it seems a "legal certainty" (*St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938)) that Armen-Berry could not obtain a judgment for more than $10,000 on its counterclaim.

We need not rest this conclusion entirely on the *Freese* line of cases, and perhaps it would be dangerous to do so in light of *McNay v. Stratton*, 9 Ill.App. 215 (1881), *app. dismissed*, 109 Ill. 30 (1884), where a few years after *Freese* was decided an Illinois appellate court held that punitive damages could be awarded in a false-imprisonment case without proof of any actual damages. The court distinguished *Freese* as having turned on a construction of the particular statute sued on in that case. A possible reconciliation of the two cases lies in the outrageous character of the defendant's behavior in *McNay*. "In attempting to take the law into his own hands, he put in great peril the life of himself as well as that of the appellant, disturbed the good order of society, and interrupted the peaceful sway of the law, to which all should submit." 9 Ill.App. at 221. In contrast, *Freese* involved the sale of liquor to a habitually intoxicated man, in violation of a statute that gave a cause of action to the wife. The present case is more like *Freese* than *McNay*.

■ Moreover, *McNay* states explicitly that punitive damages may be awarded in

Illinois only in cases "either where 'malice, violence, oppression or wanton recklessness, mingle in the controversy,' or where the act complained of partakes of a criminal or wanton nature." *Id.* (quoting *Toledo, Peoria & Warsaw R.R. v. Patterson,* 63 Ill. 304, 307 (1871)). This formulation has been repeated many times, with variations immaterial to the present case; for a recent example see *Tower Oil & Technology Co. v. Buckley,* 99 Ill.App.3d 637, 647, 54 Ill.Dec. 843, 425 N.E.2d 1060, 1069 (1981). If, as we have held, Schiff had a lawful purpose when he made the interception, Armen-Berry could not get punitive damages under Illinois law even if an Illinois court were to reject the broad principle of *Freese.* "If no circumstances of aggravation be shown, and no evil motive be imputed, then vindictive damages should not be given." *Patterson, supra,* 63 Ill. at 307. That describes the present case exactly. It is irrelevant that Schiff's decision to erase the tape, which is no more actionable under the Illinois than under the federal statute, may have had a bad purpose.

We may, of course, be predicting incorrectly how the Illinois courts would rule on Armen-Berry's claim for punitive damages; but if so our mistake fortunately is not irrevocable even so far as the parties to this case are concerned. Armen-Berry can sue By-Prod and Schiff under Article 14 of the Illinois Criminal Code in an Illinois court, and that court will not be bound by our reading of the Illinois law of punitive damages.

The last question is whether the district court abused its discretion in refusing to exercise pendent jurisdiction over the state count in the counterclaim. The Supreme Court has held that pendent jurisdiction should "certainly" be declined where, as here, the claim to which it is pendent (the federal count in Armen-Berry's counterclaim) is dismissed before trial. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). But even apart from that dismissal, we think it would have been an abuse of discretion for the district judge to retain the state-law count; it would have been inconsistent with the rule that permissive counterclaims require an independent federal jurisdictional basis.

The same policies of judicial economy underlie both the compulsory-counterclaim rule and the pendent-jurisdiction doctrine. If considerations of judicial economy do not bring a particular case within Rule 13(a), neither do they support invoking pendent jurisdiction. And the same principles of federalism that we said earlier limit the compulsory-counterclaim concept in order to preserve the authority of state courts to decide issues of state law (except where considerations of judicial economy, or diversity of citizenship, confer federal jurisdiction to decide such issues) should operate to preserve their authority against an easy assumption of competence to decide issues of state law under pendent jurisdiction. Therefore, in a case where considerations of judicial economy do not support federal retention of a counterclaim, as is implied by a conclusion that the counterclaim is not compulsory, a federal court should not assume jurisdiction of the counterclaim in the name of pendent jurisdiction. The doctrine of pendent jurisdiction should not be used to make end runs around the limitations in Rule 13(a).

Affirmed.