Lawrence J. STOCKLER,
Plaintiff–Appellant,

v.

C. William GARRATT,
Defendant–Appellee.

No. 88–2263.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 29, 1989.

Decided Jan. 11, 1990.

Rehearing and Rehearing En Banc
Denied Feb. 27, 1990.

Michael C. Crowley (argued), Lawrence J. Stockler & Associates, Southfield, Mich., for plaintiff-appellant.

Richard A. Wilhelm (argued), Lawrence Campbell, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for defendant-appellee.

Before MERRITT, Chief Judge; RYAN, Circuit Judge; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Plaintiff-appellant Stockler, an attorney, appeals a district court order granting summary judgment in favor of defendant-appellee Garratt, also an attorney, in a suit alleging a violation of the Omnibus Crime Control & Safe Streets Act of 1968 ("Title III") and other claims.[1] The suit arose as the result of an incident in which Garratt allegedly instructed Daniel Vlachos to tape record negotiations between Vlachos and Stockler concerning a pending bankruptcy matter in which Vlachos owed money to Stockler's clients. Stockler contends that the district court erred in concluding as a matter of law that there was no evidence that the tape was made for a "criminal or tortious purpose," a necessary element of a Title III case. Because we believe from the evidence that conflicting inferences arise as to the purpose for the interception, we reverse.

Garratt represented Daniel Vlachos, the debtor in a bankruptcy matter. Stockler represented certain of Vlachos' creditors. While the case was pending, the bankruptcy judge informed the United States Attorney's office of certain acts by Vlachos that led to a bankruptcy fraud investigation of Vlachos. Stockler met with the F.B.I. and the United States Attorney during the investigation. At some point, Garratt ceased representing Vlachos, but Vlachos nevertheless sought Garratt's advice about getting Stockler to agree to a reduction in the amount of money Stockler was demanding for his clients. Garratt, Stockler alleges, instructed Vlachos to conceal a tape recorder on his person and to record a conversation between Stockler and Vlachos, and Garratt suggested questions to be asked of Stockler. Stockler alleges that Vlachos met with him, asked the questions, and recorded the conversation. It is undisputed that the recording was never used against Stockler in any way.

Garratt moved to dismiss the suit for failure to state a claim upon which relief can be granted, see Fed.R.Civ.P. 12(b)(6), and relied on his affidavit denying that he advised Vlachos to record any conversation with Stockler. Stockler relied on Vlachos' deposition, in which he testified as follows with respect to Garratt's instructions to him:

Q. What was your purpose in going to see him [C. William Garratt]?

A. To discuss my bankruptcy settlement.

Q. Did you actually have settlement papers in hand?

A. I had some papers. I wasn't too familiar with them at the time, I guess, but I had some papers and I also informed him that I had an appointment with Mr. Stockler to make a settlement and that if he could see anything that would be to my advantage as far as a settlement goes, I'd appreciate it and eco-

1. Title III is codified at 18 U.S.C. §§ 2510–2520 (1982 & Supp.1989). The statute authorizes the recovery of damages and reasonable attorney's fees and costs in a civil action. *Id.* § 2520 (Supp.1989). Stockler's other claims included

bribery, conspiracy, extortion, blackmail, violation of the right of privacy, and violation of the Michigan eavesdrop statute, Mich.Comp. Laws Ann. § 750.539(a) & (c) (West 1979).

nomically, too, that was the purpose so I wouldn't have to pay out that kind of money. I thought there may be a legal term or legal angle he could see that would help me out.

Q. What did he tell you to do?

A. Well, he said he would and he said, don't make a settlement with him but he says, I want you to tape the conversation.

. . . .

He said, when you go see him, I want you to tape the conversation. He said, did you ever do that before or something like that. I said no, I have never done anything like that. He said, well, you do that and you ask him the questions I tell you to ask him. I assumed when he said that, that he was going to save me some money.

. . . .

He says if he gives you the right answers and you answer the questions properly, then we've got him. I assumed that was the purpose, to save money.

. . . .

Well, I assumed that when he said we've got him, that I would be in a good position to make a lower settlement. We'd use that as a leverage against him to not pay out all that money that he was demanding I pay.

. . . .

That's the purpose of the nature of the whole thing. I didn't want to pay all that money out, if I could, but I didn't have to, you know—

. . . .

Well, he just said, make sure you ask him that if you pay him, would he drop all the charges and get the FBI off my back and stuff like that. And that was it. He says, then we will go from there. If he gives you the answers I want, then that's all we need.

Joint Appendix at 125–26.

The district court treated Garratt's motion as one for summary judgment, *see* Fed.R.Civ.P. 12(b). The court held that because Vlachos did not testify that the tape recording was made for any "criminal or tortious purpose," Stockler could not prove a claim under Title III. The court then characterized Stockler's remaining claims as pendent state law claims and dismissed them under the authority of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The court thereupon dismissed the action.

■ We first must answer the question whether Title III makes unlawful an interception by a participant in a conversation who is not acting under color of law when the information obtained is never used. The statute states in pertinent part:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;

. . . .

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

. . . .

(2) . . .

(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. §§ 2511(1)(a), (2)(d) (Supp.1989).

The Seventh Circuit has faced the question whether interception can be unlawful if it is never used. *By–Prod Corp. v. Armen–Berry Co.*, 668 F.2d 956 (7th Cir. 1982). The court reasoned that a statute with such severe penalties as Title III imposes must be intended to punish something more than evil purposes divorced from any possibility of actual harm. Because the court saw no harm in interception without use, it upheld the dismissal of a Title III claim involving a recording that

was made and then erased by recording over it without its ever being heard. *Id.* at 959–60.

Our court has never squarely faced this question.[2] Looking to the plain language of the statute as it applies to a person not acting under color of law, it requires an interception or procurement of an interception by a person and a criminal or tortious purpose on the part of the interceptor or procurer. The statute does not by its terms, to create liability, provide that the recording actually be used. This omission cannot be assigned to a scrivener's error and, of course, if actual use was intended to be required, Congress can readily amend the statute to so provide. While we recognize that, without requiring use of the interception, it will be a problem, as here, to determine the purpose, it can hardly be said that, as written, the statute does not make sense. We hold, therefore, that it is not necessary for liability that the interception be used for a criminal or tortious purpose.

■ Stockler contends that it reasonably could be inferred from Vlachos' deposition that Garratt intended to intercept Stockler's conversation with Vlachos in order to use it to blackmail Stockler. It appears to us that Vlachos' deposition does support the contention that Garratt sought to obtain a statement on the tape by Stockler that would enable Vlachos to force a settlement of the controversy that would be favorable to Vlachos. Therefore, we cannot agree with Garratt's contention that the only permissible inference to be drawn from Vlachos' deposition is that Garratt desired to record the conversation only to preserve an accurate record thereof.

The Michigan blackmail statute provides in pertinent part:

*Any person who shall ... maliciously threaten to accuse another of any crime or offense, or shall ... maliciously*

*threaten any injury to the person or property ... of another* with intent thereby to extort money or any pecuniary advantage whatever, or *with intent to compel the person so threatened to do or refrain from doing any act against his will,* shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Mich.Comp. Laws Ann. § 750.213 (West 1979) (emphasis added). *See also People v. Krist,* 97 Mich.App. 669, 296 N.W.2d 139 (1980) (To constitute statutory extortion, it is sufficient if there is a "threatening ... of any ... injury to the person or property of ... another with intent to thereby extort money or pecuniary advantage."). It appears to us that if the purpose of Garratt was to obtain on the tape a statement by Stockler that would enable Vlachos to force a favorable settlement of the claims against him, the purpose of obtaining the statement on the tape would be to blackmail Stockler.[3] That is true because the tape would be used to threaten harm to Stockler with the intent to compel him to accept less money for his clients.

The party seeking summary judgment has the burden of showing that based on the pleadings, depositions, answers to interrogatories, and any admissions on file, together with affidavits, if any, there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the nonmoving party. *Ramsey v. Board of Educ.,* 844 F.2d 1268, 1271 (6th Cir.1988); *Blakeman v. Mead Containers,* 779 F.2d 1146, 1150 (6th Cir. 1985).

---

**2.** In *Boddie v. American Broadcasting Co.,* 881 F.2d 267, 270 (6th Cir.1989) *("Boddie II"),* the panel's opinion quoted with approval the statements in *By–Prod* about nonuse. *Boddie* clearly involved, however, the *use* of a secretly made videotape; therefore, the opinion's reference to *By–Prod* is dicta and does not bind this panel.

**3.** Although Stockler did not expressly rely on the Michigan blackmail statute in his pleadings, he alleged blackmail as one of Garratt's improper purposes.

The district court granted summary judgment because Vlachos did not "testify that the tape recording was made for any criminal or tortious purpose." This is not, however, the proper standard for deciding a motion for summary judgment. The district court did not consider reasonable inferences that could be drawn from the Vlachos deposition. Because conflicting inferences can be drawn from the language of Vlachos' deposition, summary judgment is not an appropriate disposition of this case.

For the foregoing reasons, we RE-VERSE the judgment of the district court and REMAND for further proceedings not inconsistent with this opinion.

MERRITT, Chief Judge, dissenting.

Our court appears to have decided already in a contrary way the same question of the meaning of the phrase in the wiretap statute, "unless such communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d) (Supp.1989). Judge Brown, in another opinion for the Court rendered five years ago, said:

> The Wiretap Statute requires the plaintiff to show that the defendants intended an illegal, tortious or injurious act other than the recording of the conversation. Even if we assume that the defendants, by the mere interception, violated these regulations, the question remains under § 2511(2)(d) whether the defendants intended to *use* the recorded conversation to injure Boddie.

*Boddie v. American Broadcasting Cos.*, 731 F.2d 333, 339 (6th Cir.1984) (*Boddie I*) (emphasis added) (citations omitted) (citing *By–Prod Corp. v. Armen–Berry Co.*, 668 F.2d 956, 960 (7th Cir.1982) (holding *use* necessary for violation of § 2511(2)(d)).

That holding, citing a Seventh Circuit case, was reiterated in *Boddie II*, which came to us after remand in *Boddie I.* In *Boddie II*, Judge Kennedy, writing for the Court, said:

> But while the statute on its face does not punish the use of communications, as a practical matter it is doubtful 'that a tape

recording which was never used could form the basis for liability under § 2511(2)(d). As the Seventh Circuit has observed:

> It would be a dryly literal reading of the statute that found a violation because at the moment of pressing the 'on' button a party to a conversation conceived an evil purpose though two seconds later he pressed the 'off' button and promptly erased the two seconds of tape.... A statute that provides for minimum damages of $1,000 per violation must have more substantial objects in view than punishing evil purposes so divorced from any possibility of actual harm. We think it is the *use* of the interception with intent to harm rather than the fact of interception that is critical to liability....

*Boddie v. American Broadcasting Cos.*, 881 F.2d 267, 270 (6th Cir.1989) (*Boddie II*) (quoting *By–Prod*, 668 F.2d at 960) (emphasis added) (ellipsis in original).

Thus this Court seems to have previously held twice, following the Seventh Circuit, that "use" is necessary in order to satisfy the "criminal or tortious act" language of § 2511(2)(d). Our opinion in the present case appears to put us in conflict with the Seventh Circuit, a conflict which only the Supreme Court can resolve. It also puts us in conflict with ourselves, which our Court can only resolve by an *en banc* proceeding.

In the present case, there is no significant evidence from which one could infer that Garratt intended to blackmail Stockler. We do not know how Garratt and Vlachos intended to use the tape recording. Without a rule requiring use, like that adopted by the Seventh Circuit, and apparently by Judge Brown in *Boddie I* and Judge Kennedy in *Boddie II*, a jury could infer almost anything from the inchoate, incomplete activity. So long as no use is made of the information at all, as in this case, it is impossible to tell what use was intended and whether such use would amount to blackmail or some other wrongful act.

Thus the use requirement which this Court and the Seventh Circuit have previously adopted makes sense, much like the overt act requirement in a conspiracy case.

Without any use of the information, or any concrete step in furtherance of a purpose to use the information wrongfully, the "bugger's" intent remains speculative and the wrongdoing difficult to ascertain.

For the foregoing reasons I would impose a use requirement, and I therefore respectfully dissent.