UNITED STATES of America,
Plaintiff-Appellee,

v.

Mitchell EDELSON, Jr.,
Defendant-Appellant.

No. 77–1613.

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1978.

Decided Aug. 30, 1978.

Rehearing and Rehearing En Banc
Denied Oct. 13, 1978.

Allan A. Ackerman, Chicago, Ill., for defendant-appellant.

Marvin R. Loewy, Sp. Atty., U. S. Dept. of Justice, Chicago, Ill., for plaintiff-appellee.

Before PELL, TONE and BAUER, Circuit Judges.

PER CURIAM.

On October 22, 1975, the defendant-appellant Mitchell Edelson, Jr., was charged with violating 18 U.S.C. § 1623 by making false material statements to a federal grand jury that was investigating the involvement of one Vito Nicasio in the transfer of stolen securities. The Government's evidence at trial consisted largely of seven taped conversations that had been recorded by an informant named Roger Camp. On the basis of these recordings, the trial court found the defendant guilty on April 4, 1977. From this judgment Edelson now appeals.

In the first of several arguments on appeal, Edelson claims that the district court improperly denied his pretrial request for the production of certain grand jury materials. While the appellant did receive a transcript of his own testimony, he insists that the additional materials might have disclosed evidence of prosecutorial misconduct or enabled him to show that his own assertions were not "material" to the grand jury's investigation.

A defendant, however, is not entitled to a disclosure of grand jury proceedings without some demonstration of "particularized need," *Pittsburgh Plate Glass Company v. United States*, 360 U.S. 395, 400, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), and such a demonstration has not been made in this case. To begin with, Edelson has not pointed to anything in the record which might suggest that the prosecution engaged in improper conduct before the grand jury. His claims on this point, therefore, amount to nothing more than unsupported speculation, and this is not enough to constitute a "particularized need." See *United States v. Bitter*, 374 F.2d 744, 748 (7th Cir. 1967); *United States v. Chase*, 372 F.2d 453, 466 (4th Cir.), *cert. denied*, 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967).

If Edelson wished to determine whether the grand jury minutes contained any information inconsistent with the evidence offered by the government to meet

its burden of proof on materiality, the proper procedure would have been to ask the district judge to examine the minutes *in camera* and report on the record whether they contained such inconsistent information. If they did, the Government would then be forced to elect whether to acquiesce in disclosure or dismiss the indictment. Edelson made no request for *in camera* inspection by the judge. It is apparent from the record in any event that his omission did not prejudice him, because the questions and answers concerning his knowledge of possible stolen securities and counterfeit money transactions were relevant to the grand jury's inquiring into possible violations of the law relating to stolen securities and counterfeit currency.

The appellant next attacks the admissibility of the seven taped conversations on the grounds that 18 U.S.C. § 2511(2)(d) is void for vagueness. The statute provides:

> "It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act."

■ We note at the outset that it is by no means clear that Edelson has standing to raise the vagueness argument since the statute does not charge criminal violations against the *non-recording* party to the recorded conversation. But assuming, *arguendo*, that Edelson does have standing, we are not persuaded by the appellant's claim that the terms "criminal," "tortious" and "injurious act" are so vague that "men of common intelligence must necessarily guess at [their] meaning and differ as to

[their] application." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1965). On the contrary, we find the statute to be sufficiently explicit to "inform those who are subject to it what conduct on their part will render them liable to its penalties."[1] *Id.* 127.

We also cannot agree with Edelson's claim that the Government's conduct in the circumstances of this case was so "outrageous" as to constitute a denial of due process rights. On this point, the appellant appears to argue that he was "entrapped" by the Government because he was not informed of his "target" status before the grand jury, nor was he informed that the Government had in its possession the recordings of his conversations with Camp.

■ The district court found, however, that the "target" of the grand jury's investigation was not Edelson but Vito Nicasio, and we see no reason for disturbing this finding on appeal. The mere fact that the grand jury interrogation focused on some of the appellant's specific activities does not mean that he had become the target of the investigation, for those activities were directly related to Nicasio's alleged involvement in the transfer of stolen or fraudulent securities. Equally if not more important, however, the Supreme Court has recently determined that the failure to inform a grand jury witness that he is a target of the investigation does not alone amount to a due process denial which could excuse perjury. *United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). Thus, even if Edelson "was indeed a 'putative defendant,' that fact would have no bearing on the validity of a conviction for testifying falsely." *Id.* at 583, 96 S.Ct. at 1780.

■ Similarly, we cannot accept the appellant's claim that the prosecution was under an obligation to disclose the existence of the taped conversations before questioning him in the course of the grand jury proceedings. As the Second Circuit has held:

---

1. In this connection, Edelson also claims that the recorded conversations were a tortious invasion of his privacy and thus did not comply with the terms of § 2511(2)(d). It is quite clear, however, that the conversations were not recorded "for the purpose of" invading the appellant's privacy.

"There is no duty on the prosecution to tell a Grand Jury witness what evidence it has against him or to give him repetitive warnings that it is his duty to tell the truth when he has sworn upon his oath to tell the truth. It is not an unfair dilemma to put upon a prospective defendant to require him to claim [the Fifth Amendment] privilege or to tell the truth."

*United States v. Del Toro*, 513 F.2d 656, 664 (2d Cir. 1975).

■ In sum, then, we find nothing remotely akin to "entrapment" in the facts of this case. Edelson was not encouraged or solicited by the Government to commit perjury, but rather, was lawfully subpoenaed to answer questions about matters that were directly related to the grand jury's inquiry. The appellant was "free at every stage to interpose his constitutional privilege against self-incrimination, but perjury was not a permissible option."[2] *United States v. Mandujano, supra*, 425 U.S. at 584, 96 S.Ct. at 1780.

Finally, Edelson insists that the Government's evidence was insufficient to establish two necessary elements of a § 1623 offense: (1) the falsity of his statements before the grand jury and (2) the materiality of his statements to the grand jury's investigation. The first claim warrants little discussion. In the course of the grand jury proceedings, Edelson gave the following responses:

Q. "Did you ever tell Mr. Camp that Mr. Nicasio would be hesitant about bringing merchandise, securities, or any type of property whatsoever across state lines, or that he was not going to cross the state lines with the merchandise or property?"

A. "I did not say such a thing to Mr. Camp."

Q. "Did you ever agree with Roger Camp to make arrangements for the exchange of said merchandise, whatever it may be, in a place outside your office that 'would not and could not be bugged'?"

A. "No, I did suggest a place outside my office. I suggested they go to the American National Bank."

On the other hand, the Government's tape recordings contained the following statements (among others):

Edelson: "But he [Nicasio] is not coming to Chicago, I'll tell you that right now, he's not going to cross the state line with it. You have to go there. But I'm telling you right now there is no way in hell he's going to transport this stuff."

\*　\*　\*　\*　\*　\*

Edelson: "He [Nicasio] is thinking over how he can handle it without taking the danger of doing anything in the mail or having anything on his person when he crosses the state line."

\*　\*　\*　\*　\*　\*

Camp: "Well I assume that where we're going to do it is your office, right?"

Edelson: "Probably not."

Camp: "Probably not, okay. But I'm a little leery myself, I understand the nature of the merchandise, it's a little warm, but which doesn't constitute a problem but I want to be as cautious as the next guy, okay?"

Edelson: "You want me to make sure that the arrangements are made, that the meeting takes place in a place that will not and cannot be bugged."

Camp: "Yeah."

Edelson: "Alright, that's simple. Good-bye."

■ We have no difficulty in concluding that, when taken with the testimony at trial, this evidence is sufficient to support the district court's finding that Edelson knowingly gave false answers to the grand jury interrogation.

■ By the same token, we must conclude that the appellant's responses were "material" to the grand jury's investigation. The grand jury was appropriately con-

**2.** It should perhaps be noted that the appellant was advised of his constitutional rights on

three occasions in the course of his grand jury appearance.

cerned with Vito Nicasio's possible involvement in the transfer of stolen or fraudulent securities, and it had ample reason to believe that Edelson was directly involved with Nicasio in this activity. If Edelson had responded truthfully to the questions, a follow-up inquiry might very well have disclosed information that would have inculpated Nicasio. It is quite apparent, therefore, that the appellant's answers had "the natural effect or tendency to impede, influence or dissuade the grand jury from pursuing its investigation," *United States v. Devitt*, 499 F.2d 135 (7th Cir. 1974), and were thus "material" to the grand jury's inquiry.

We have examined the appellant's other arguments and find them to be without merit. The judgment of the district court is therefore

AFFIRMED.