Sandra A. BODDIE, Plaintiff–Appellant,

v.

AMERICAN BROADCASTING COMPANIES, INC.; Geraldo Rivera; Charles C. Thompson; and Maravilla Production Company, Inc., Defendants–Appellees.

No. 88–3934.

United States Court of Appeals, Sixth Circuit.

Argued June 8, 1989.

Decided July 28, 1989.

Rehearing and Rehearing En Banc Denied Sept. 14, 1989.

**268**

Richard Sternberg (argued), Sternberg, Newman & Associates, Akron, Ohio, for Sandra A. Boddie.

Terence J. Clark (argued), Squire, Sanders & Dempsey, Michael E. Brittain, Calfee, Halter & Griswold, Cleveland, Ohio, for American Broadcasting Companies, Inc., Geraldo Rivera, Charles C. Thompson, and Maravilla Productions Co., Inc.

Before KENNEDY, JONES, and WELLFORD, Circuit Judges.

KENNEDY, Circuit Judge.

This case is before the Court for the second time. The dispute between the parties arose out of the ABC investigative report "Injustice for All," an expose of judicial corruption in Akron, Ohio. The program investigated charges that Judge James Barbuto had shown leniency to criminal defendants in return for sexual favors. Plaintiff Sandra A. Boddie agreed to be interviewed for the program, but refused to appear on camera. In spite of Boddie's refusal, defendants secretly videotaped her interview, a portion of which was broadcast. Plaintiff responded by suing ABC, producer Charles C. Thompson, and correspondent Geraldo Rivera for invasion of privacy, placing her in a false light, def-

amation, and violation of the wiretap provisions of Title III of the Omnibus Crime Control and Safe Streets Act ("Title III"), 18 U.S.C. § 2511 *et seq.* A jury found for defendants on the tort counts. The trial judge dismissed the Title III count, and plaintiff appealed.

On appeal, this Court held that the District Court improperly dismissed the Title III count. *Boddie v. ABC,* 731 F.2d 333 (6th Cir.1984) ("Boddie I"). Title III generally bans the nonconsensual interception or recording of another's communications. An exception to this general rule is carved out by section 2511(2)(d), which privileges a party to a communication to intercept and record that communication without the other party's consent *"unless* such communication is intercepted for the purpose of committing any criminal or tortious act ... or for the purpose of committing any other injurious act." 18 U.S.C. § 2511(2)(d) (emphasis added). The jury verdict precluded any claim that defendants acted with a criminal or tortious purpose.[1] However, the panel concluded that whether defendants acted with an injurious purpose, rather than the benign purpose of newsgathering, presented a factual issue for the jury to resolve. *Boddie I,* 731 F.2d at 338.

While the case was on remand, Congress amended section 2511(2)(d), deleting the "injurious" purpose language. Under the current version of the statute, nonconsensual interception by a party to a communication is privileged unless the communication is intercepted for a criminal or tortious purpose. Interception for a merely "injurious" purpose is no longer actionable. The District Court deemed the 1986 amendment a "clarification" of the pre–1986 provision, which demonstrated that Congress never intended the phrase "injurious purpose" to allow "a cause of action for conduct relative to the gathering and disseminating of news which does not rise to the level of a crime or tort...." *Boddie v. ABC,* 694

---

1. Plaintiff argues for the first time in this appeal that defendants' actions constituted intentional infliction of emotional distress under Ohio law. These allegations were neither made in plaintiff's third amended complaint nor otherwise presented to the District Court, and they "may not be raised for the first time on appeal." *Yeiter v. Secretary,* 818 F.2d 8, 11 (6th Cir.), *cert. denied,* 484 U.S. 854, 108 S.Ct. 160, 98 L.Ed.2d 115 (1987) (citing *Wright v. Holbrook,* 794 F.2d 1152, 1157 (6th Cir.1986)).

F.Supp. 1304, 1309 (N.D.Ohio 1988). Accordingly, the District Court granted defendants' motion to dismiss. Plaintiff now appeals from this dismissal.

Plaintiff argues that she is entitled to have a jury determine whether defendants acted with an injurious purpose. She contends that in denying this factual hearing, the District Court improperly applied the 1986 amendment to Title III retroactively. Defendants offer three alternative responses. First, they argue that the District Court properly deemed the 1986 amendment a "clarification" of the prior law, not a substantive revision. Thus, the court did not apply the amendment retroactively; it simply used the amendment as a guide to interpreting the pre–1986 language. Second, defendants argue, even if the District Court did give retroactive effect to the amendment, the courts now recognize a presumption in favor of retroactive application to pending cases. Third, defendants contend that the first amendment precludes a construction of either version of section 2511 which would result in liability for their acts. We will consider each of defendants' contentions in turn.

*The 1986 Amendments as a "Clarification"*

■ The District Court construed the 1986 amendments to section 2511(2) as a clarification of the pre–1986 language. It is well-settled that courts may consider subsequent legislation when searching for the intent or purpose of a statute. *See, e.g., Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). Further, a subsequent amendment may serve to " 'clarify, rather than change, the existing law.' " *Callejas v. McMahon,* 750 F.2d 729, 731 (9th Cir.1984) (quoting *Brown v. Marquette Savings and Loan Ass'n,* 686 F.2d 608, 615 (7th Cir.1982)).

There is some support in the legislative history for the District Court's conclusion that the 1986 amendment was a mere clarification. The Senate report stated that numerous cases—including *Boddie I*—had "misconstrued" the term "other injurious purposes." S.Rep. No. 541, 99th Cong., 2d

Sess. 17, *reprinted in* 1986 U.S.Code·Cong. & Admin. News 3555, 3571. However, a closer look at the substance and history of the 1986 amendment reveals that Congress did not clarify section 2511(2); rather, Congress acted to eliminate one basis for an action under that section. The legislative history never explains how the courts ought to have interpreted "the term 'improper purpose' "; it says only that the term "is overly broad and vague." *Id.* Further, any inference that the amendment merely clarified the "injurious purpose" language is negated by the fact that rather than defining or rephrasing the term, the amendment removed it altogether. Finally, Congress' rationale for removing the phrase also indicates that it wished to eliminate a basis of liability altogether, not to clarify it. The Senate Report noted:

> Many news stories are embarrassing to someone. The present wording of section 2511(2)(d) not only provides such a person with a right to bring suit, but it also makes the actions of the journalist a potential criminal offense....

*Id.* This language makes clear that the purpose of the amendment was not to explain that the "injurious purpose" clause had never applied to journalists, but to eliminate an offended interviewee's "right to bring a suit" where no tort or crime is committed by the journalist. We conclude that the District Court erred in treating the amendment as a clarification of prior law.

*Retroactive Application*

■ Defendants argue that even if the 1986 amendment is not deemed a mere clarification, it should apply retroactively in this case. They contend that the Supreme Court's decision in *Bradley v. School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) has established a "strong presumption" in favor of retroactive application. *Bradley* held that an attorney's-fees provision should be applied to a fee request which was pending at the time the provision was passed. More recent decisions, however, make clear that *Bradley* represents a relatively narrow exception to the general "principle that statutes operate only prospectively," a notion "familiar to

every law student." *United States v. Security Industrial Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982). These post-*Bradley* cases have reaffirmed the "venerable rule ... that statutes affecting substantive rights and liabilities are presumed to have only prospective effect." *Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985) (citing *Security Bank,* 459 U.S. at 79, 103 S.Ct. at 413).

The 1986 amendment to section 2511(2) clearly affected "substantive rights and liabilities." Prior to the amendment, the plaintiff in "one-party consent" cases could recover by proving that the defendant acted with either a tortious or criminal purpose, or an injurious purpose; the amendment limited recovery to cases where the plaintiff can prove the former. Since it altered substantive rights and liabilities, the amendment is presumed to apply only prospectively. *Bennett,* 470 U.S. at 639, 105 S.Ct. at 1559.

*First Amendment Concerns*

■ Finally, defendants argue that the phrase "purpose of committing any ... injurious act" is unconstitutionally vague.[2] The "void-for-vagueness" doctrine requires statutes to be drafted "with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (striking down a statute requiring production of "credible and reliable" identification upon request as unconstitutionally vague). The "most important factor" in evaluating the clarity of an enactment is "whether it threatens to inhibit the exercise of constitutionally protected rights." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). Thus, "[t]he general test of vagueness applies with particular force in review of laws dealing with speech." *Hynes v. Mayor of Oradell,* 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976). Stricter standards

are required where a statute has " 'a potentially inhibiting effect on speech ..., because the free dissemination of ideas may be the loser.' " *Id.* (quoting *Smith v. California,* 361 U.S. 147, 151, 80 S.Ct. 215, 218, 4 L.Ed.2d 205 (1959)). *See also Flipside,* 455 U.S. at 499, 102 S.Ct. at 1193 ("If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply."); *Marks v. United States,* 430 U.S. 188, 196, 97 S.Ct. 990, 995, 51 L.Ed.2d 260 (1977) ("We have taken special care to insist on fair warning when a statute regulates expression and implicates First Amendment values.").

At first glance, this case may not appear to be about freedom of expression at all: the wiretapping statute proscribes the nonconsensual interception of a communication, not the use of it. But while the statute on its face does not punish the use of communications, as a practical matter it is doubtful "that a tape recording which was never used could form the basis for liability under section 2511(2)(d)." *By-Prod Corp. v. Armen–Berry Company,* 668 F.2d 956, 960 (7th Cir.1982). As the Seventh Circuit has observed:

> It would be a dryly literal reading of the statute that found a violation because at the moment of pressing the "on" button a party to a conversation conceived an evil purpose though two seconds later he pressed the "off" button and promptly erased the two seconds of tape.... A statute that provides for minimum damages of $1000 per violation must have more substantial objects in view than punishing evil purposes so divorced from any possibility of actual harm. We think it is the *use* of the interception with intent to harm rather than the fact of interception that is critical to liability....

*Id.* (emphasis added.) Moreover, from a journalist's point of view, dissemination is the reason for the interception—and the event that might trigger liability. If a journalist cannot determine whether the

---

2. In considering the issue of vagueness, we are mindful that while the present case is a civil

suit, § 2511 also provides for criminal penalties.

purposes for secretly recording an interview could be deemed "injurious" by a jury, he or she will be deterred from publishing. Therefore, even though the statute is not explicitly aimed at speech, uncertainty about its scope is likely to inhibit newsgathering and reporting.

The first amendment of course does not immunize wrongful behavior simply because it is undertaken in the name of newsgathering. Media defendants do not have a privilege to place unlawful wiretaps. At the same time, newsgathering does "qualify for First Amendment protection." *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972). The Supreme Court has "recognized that 'without some protection for seeking out the news, freedom of the press could be eviscerated.'" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576, 100 S.Ct. 2814, 2827, 65 L.Ed.2d 973 (1980) (Burger, C.J.) (quoting *Branzburg*, 408 U.S. at 681, 92 S.Ct. at 2656).[3] Since the wiretap statute has a "potentially inhibiting effect" on the press' constitutionally protected reportorial functions, the vagueness test applies "with particular force." *Hynes*, 425 U.S. at 620, 96 S.Ct. at 1760.

We conclude that section 2511(2)(d) cannot meet this test. The statute's amorphous "injurious purpose" standard fails to define precisely what interceptions are actionable. The meaning of the term "injurious" is far from self-evident; it is not defined by the statute; and it is not an established legal term of art. Nor can the provision be saved by a sensible narrowing construction. The logical narrowing construction of "injurious" purpose is "criminal" or "unlawful" purpose, but these alternatives are foreclosed by the statute. Under the pre–1986 section 2511, "injurious" is obviously different from and broad-

er than "tortious" or "criminal," since the statute premised liability on either a "criminal or tortious" purpose *or* an "injurious" purpose.

Beyond the fact that it is not a tortious or criminal purpose, it is difficult—if not impossible—to determine what Congress intended by an "injurious" purpose. The legislative history of Title III is of little help, because section 2511(2)(d) was added to the act by a hastily drafted floor amendment. The legislative history of the 1986 amendment does not attempt to define the phrase "purpose of committing any ... injurious act." Instead, it concedes that the phrase is "overly broad and vague." S.Rep. No. 541, *supra*, at 17, 1986 U.S. Code Cong. & Admin.News at 3571. As the Eighth Circuit has observed:

> There was little if any discussion in Congress on the meaning of the term "injurious act" within the framework of ... the prohibition against nonconsensual wiretaps or recordings by a participant in the conversation.
>
> . . . .
>
> A perfectly legitimate act may often be injurious. A judgment at law can be injurious to the losing party.... The term is extremely vague and broad and certainly Congress could not have intended to use the term in its literal context.

*Meredith v. Gavin*, 446 F.2d 794, 798–99 (8th Cir.1971).[4]

The ordinance struck down by the Supreme Court's opinion in *Hynes* provides an apt comparison. *Hynes* invalidated a municipal canvassing ordinance which required advance notice be given to the police by "[a]ny person desiring to canvass, solicit or call from house to house ... for a recognized charitable cause ... or ... political campaign or cause ... in writing, for iden-

---

**3.** *See also In re Express–News Corp.*, 695 F.2d 807, 808–11 (5th Cir.1982) (holding local rule barring post-trial interviews of even willing jurors without leave of court violated "first amendment right to gather news"); *United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir.1978) (district court's order barring post-trial contacts with jurors improperly impinged on newsgathering activity protected by the first amendment).

**4.** In *Meredith*, the defendant had taped a telephone call, allegedly for impeachment purposes in a workers compensation hearing. The court did not attempt to define the term "injurious," because it concluded that this purpose could not be deemed "injurious" under any plausible definition of the term.

tification only." 425 U.S. at 611, 96 S.Ct. at 1756. Noting that "laws dealing with speech" are subject to stringent vagueness standards, the Court concluded that the ordinance could not pass constitutional muster. *Id.* at 620, 96 S.Ct. at 1760. The ordinance was faulted for failing to define "recognized" charitable causes. Recognized by whom, the Court asked: the City, the IRS, the person enforcing the ordinance? Further, while "campaign" has a commonly accepted meaning, the Court found the term "political *cause*" too vague to give proper notice to potential canvassers. Finally, the Court found that the ordinance failed to clarify what information canvassers were required to present to the police for "identification purposes." *See also Kolender,* 461 U.S. at 358, 103 S.Ct. at 1858 (law requiring "creditable and reliable" identification impermissibly vague in light of "the 'potential for arbitrarily suppressing First Amendment liberties' ").

As in *Hynes,* the law at issue here "deal[s] with speech." Both section 2511(2)(d) and the canvassing ordinance address speech-related "conduct," not "pure speech." Like the canvassing ordinance, the pre–1986 section 2511(2)(d) failed to give potential speakers adequate notice of its scope. Journalists could only guess as to what was actionable. For example, is intending to broadcast an interview in spite of knowledge that the interviewee will be mortified an "injurious" purpose? What if the broadcaster knows the interviewee will be embarrassed but the motive in broadcasting is to expose corruption? We can only conclude that persons "of common intelligence must necessarily guess at [the]

meaning" of the term "injurious" as it is used in section 2511(2)(d). 425 U.S. at 620 (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)).[5] Accordingly, we affirm the District Court's dismissal of plaintiff's claim under section 2511(2)(d).

Plaintiff also appeals from the District Court's dismissal of counts brought under 42 U.S.C. §§ 1985, 1986. These counts were not raised in the first trial of this action; they first appear in plaintiff's third amended complaint on remand. Aside from any issue of "merger" or "claim preclusion," we conclude that the District Court's dismissal of these claims must be affirmed in view of our disposition of the wiretapping counts. Plaintiff's section 1985 and 1986 counts allege a conspiracy to deprive plaintiff of rights protected by the wiretap statute. Since we affirm the District Court's dismissal of plaintiff's claims under the wiretap statute, no basis remains for her section 1985 and 1986 claims.

Accordingly, the judgment below is AFFIRMED.

WELLFORD, Circuit Judge,
concurring in part and dissenting in part:

I concur in those part of Judge Kennedy's opinion entitled "The 1986 Amendments as a 'Clarification,' " and "Retroactive Application." I would add to the "clarification" discussion, however, that the district court was not free to reevaluate a statutory interpretation reached by this court. In light of *Boddie I,* the district court should have determined only whether the subsequent elimination of the "injuri-

---

**5.** We are not persuaded by the authorities cited by the dissent, because none of these cases squarely addressed the issue we face today. The Seventh Circuit has stated in *dicta* that "the terms 'criminal,' 'tortious' and 'injurious act' are [not] so vague that 'men of common intelligence must necessarily guess at [their] meaning.' " *United States v. Edelson,* 581 F.2d 1290, 1292 (7th Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979) (quoting *Connally,* 269 U.S. at 391, 46 S.Ct. at 127.) But *Edelson* did not explain the reasoning behind this bare assertion—which was unnecessary to its decision as defendant was the *non-recording* party— and we are not persuaded by it. The terms

"tortious" and "criminal" are plain enough; but the class of injurious (but nontortious and noncriminal) acts is extremely broad and indefinite. The other cases cited by the dissent—*Meredith, supra,* and *Moore v. Telfon Communications Corp.* 589 F.2d 959 (9th Cir.1978)—determined that using recordings in a defensive manner, such as to preserve evidence for trial, clearly was *not* injurious; but neither case offers much guidance as to what *is* injurious. *Meredith,* for example, could do no better than to define "injurious" actions as "certain kinds of harmful conduct which might not strictly be criminal or tortious." 446 F.2d at 799. This is hardly helpful.

ous act" phraseology had retroactive effect. I agree that the amendment could only have prospective application. Congress may not, in the guise of a change in legislation, effect the legal outcome of actions between private parties which had already taken place; it may not usurp the judicial function to decide a particular case or controversy.

I disagree with that part of Judge Kennedy's opinion which holds the statute in question to be unconstitutionally vague particularly after an initial remand by this court. This part of the Wiretap Act has been reviewed and accepted as constitutional by every other circuit which has considered it. The Eighth Circuit considered the specific language questioned by my colleagues in *Meredith v. Gavin*, 446 F.2d 794 (8th Cir.1971). The court in *Meredith* made the following observations about the statute and the question before it.

> Since concededly no criminal or tortious act is involved, the specific question before us is whether the conversation was intercepted "for the purpose of committing any * * * injurious act" under § 2511(2)(d). . . .

> It is to be observed that § 2511(1) of the statute outlaws all interception, use, or disclosure of oral or wire communications. Standing by itself, this prohibition would apply to any interception, use, or disclosure by or with the consent of one of the parties to the communications, as well as by third parties. Such a provision would of course go considerably beyond existing law in this area. *See, e.g., United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). Congress however did not intend such a result, but provided in §§ 2511(2)(c) and (d) that certain interceptions with the consent of one of the parties to the communication would not be unlawful.

*Meredith*, 446 F.2d at 797 (footnote omitted).

The court also construed the meaning of the term "injurious act:"

> It does seem that by using the term "injurious act" in conjunction with "criminal and tortious acts", it was intended to reach certain kinds of harmful conduct which might not strictly be criminal or tortious. The scope of such harmful conduct must be determined on a case-by-case basis. However, it seems apparent from the context in which the statute was enacted that the sort of conduct contemplated was an interception by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed.

*Id.* at 799.

In the context of a specific challenge by a criminal defendant for vagueness, the Seventh Circuit upheld the Act's constitutionality:

> But assuming, *arguendo*, that Edelson does have standing, we are not persuaded by the appellant's claim that the term "criminal," "tortious" and "injurious act" are so vague that "men of common intelligence must necessarily guess at [their] meaning and differ as to [their] application." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). On the contrary, we find the statute to be sufficiently explicit to "inform those who are subject to it what conduct on their part will render them liable to its penalties." *Id.* 46 S.Ct. at 127.

*United States v. Edelson*, 581 F.2d 1290, 1292 (7th Cir.1978) (footnote omitted, brackets in original).[1]

The meaning of the Act was considered again by yet another circuit in *Moore v. Telfon Communications Corp.*, 589 F.2d 959 (9th Cir.1978), which aligned itself with

---

1. I question the majority's view that this was dicta. Before turning to the vagueness issue, the *Edelson* court stated that "it is by no means clear" that the statute could be applied to the "non-recording" party. Although the court could have based its decision on that question, it proceeded to address the vagueness question and resolve the issue on that basis. *Edelson*, 581 F.2d at 1292.

the two other circuits. *Moore* considered the legislative history in more detail in its interpretation:

> Moore next argues that the trial judge erred in instructing the jury as to 18 U.S.C. § 2511(2)(a)(d), the exception to the blanket prohibition against willful interception applicable to a party to the communication not acting under color of law. As already mentioned, a person is not entitled to this exemption if his purpose was to commit a criminal, tortious or injurious act. Moore objects because the jury was instructed that in determining whether Anderson recorded with the purpose of committing an injurious act it could consider, *inter alia*, whether the conversations were recorded for the purpose of *improperly* terminating Moore's franchise. Moore contends that if Anderson's purpose was to terminate Moore's franchise *properly* it also would amount to an injurious act.
>
> Congress did not define the meaning of "injurious act." While we acknowledge that the term embraces acts not easily classified as either "criminal" or "tortious," we cannot believe that Congress intended it to be read to embrace every act which disadvantages the other party to this communication. Such a reading would nullify the exemption created by § 2511(2)(a)(d). Presumably there is some disadvantage in having any conversation intercepted in the absence of consent of all parties. Congress, we believe, intended to permit one party to record conversation with another when the record is acting "out of a legitimate desire to protect himself."

*Moore*, 589 F.2d at 965–86.

In footnotes 3 and 4 from the above cited portion from *Moore*, the court noted:

> 3. The statute originally exempted from its prohibition any interception of a wire or oral communication where one of the parties to the communication consented. 2 U.S.C.Cong. & Ad.News, 90th Cong., 2d Sess., p. 2181 (1968). Senator Hart objected to this exemption because it was too permissive, possibly allowing one party to monitor the communication for "insidious purposes such as blackmail, stealing business secrets, or other criminal or tortious acts in violation of Federal or State laws." *id.* at 2236. Senators Hart and McClellan proposed an amendment to narrow the exemption, part of which was enacted as § 2511(2)(a)(d). Senator Hart cast the only light upon the meaning of "injurious act" stating, "We propose to prohibit a one party consent tap, except ... for private persons who act in defensive fashion ... [W]henever a private person acts in such situations with an unlawful motive he will violate the criminal provisions of title III and will also be subject to a civil suit. Such one party consent is also prohibited when the party acts in any way with an intent to injure the other party to the conversation in any other way. For example the secret consensual recording may be made for the purpose of blackmailing the other party, threatening him, or publicly embarrassing him.... 114 Cong.Rec. 147694 (May 23, 1968).
>
> 4. Senator Hart, further describing the purpose of the amendment, noted that it did not prohibit "such recording in other situations when the party acts out of legitimate desire to protect himself and his own conversations from later distortion or other unlawful or injurious uses by the other party." 114 Cong.Rec. 14694 (May 23, 1968).

The Fourth Circuit also considered an asserted cause of action against, interestingly enough, American Broadcasting Company, and made no indication that the language of the phrase in question rendered the statute unconstitutionally vague." *Brown v. American Broadcasting Co.*, 704 F.2d 1296, 1305 (4th Cir.1983). See also *Benford v. American Broadcasting Co.*, 502 F.Supp. 1148 (D.Md.1980), *affd mem.*, 661 F.2d 917 (4th Cir.), *cert. denied sub nom. Holton v. Benford*, 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981), for treatment of an episode remarkably like the one in the instant case. In *Benford*, even congressional defendants' claims of immunity were held not to prevail in the face of a civil claim brought under the statute in question.

I find the decisions of these courts to be both instructive and constructive and that their reasonable interpretations of the Act preclude a finding that the statute, before its amendment following *Boddie I,* was unconstitutionally vague. "Injurious act" could thus encompass not only a criminal but also a tortious act as well as a "defensive" act to protect oneself from blackmail or extortion, or it may mean a "threatening act" or one designed to cause another person unnecessary or improper public humiliation or embarrassment with a malicious or fraudulent motive. It may be fairly interpreted, in my view, in a narrow sense in light of congressional concerns regarding personal privacy.

In *Boddie I,* moreover, we cited *Meredith* and *Moore* with approval, and that "[T]he determination of whether an interception was made with a purpose to commit any criminal tortious or injurious act, must be made on a 'case-by-case basis.'" 731 F.2d at 338 n. 4 (quoting *United States v. Phillips,* 540 F.2d 319, 325 (8th Cir.), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976)). The prior panel in *Boddie I* made no finding and gave no hint that this court considered the statutory language unconstitutional. Indeed, it would have been disingenuous for the *Boddie I* panel to interpret a statute it believed to be unconstitutionally vague.

Very recently, the Supreme Court has stated that "where the literal meaning of a statutory term would 'compel an odd result,' ... we must search for other evidence of congressional intent to lend the term its proper scope." *Washington Legal Foundation v. United States Dept. of Justice,* —— U.S. ——, ——, 109 S.Ct. 2558, 2566, 105 L.Ed.2d 377 (quoting *Green v. Bock Laundry Machine Co.,* 490 U.S. ——, ——, 109 S.Ct. 1981, 1984–85, 104 L.Ed.2d 557 (1989). Again, the Court stated, " 'the circumstances of the enactment of particular legislation,' for example, 'may persuade a court that Congress did not intend words of common meaning to have their literal effect.'" *Id.* at ——, 109 S.Ct. at 2566

(quoting *Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981)). The words, "injurious act," then should be read in light of congressional purpose and narrowly construed as has been done by a number of courts that have examined the statutory language in question.

I also object to the majority's contention that the first amendment is somehow implicated in this case. As conceded by my colleagues, "the wiretapping statute proscribes the nonconsensual *interception* of a communication, not the use of it." Yet the majority, however, refers to some dicta in *By–Prod Corp. v. Armen–Berry Co.,* 668 F.2d 956, 960 (7th Cir.1982), which states "we doubt anyway that a tape recording which was never used could form a basis for liability under section 2511(2)(d)," and infers that the statute really punishes the "dissemination" of the recording. From this, the majority reasons that, because of the statute, defendants "might be deterred from publishing" an interview which has been secretly recorded. I believe the majority stretches the meaning and intent of the statute so as to construe it as "likely to inhibit newsgathering and reporting." Rather, it deters only nonconsensual recording intended to injure, embarrass, or insult the nonconsenting party. There is not in this situation a genuine "freedom of the press" issue as generated by Judge Kennedy in her discussion of this statute. Nor do I find the case of *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976), to provide an "apt comparison" to this case.

I would not declare, in the face of the precedent herein discussed, the statute to be unconstitutionally vague. I, therefore, dissent from the affirmance of the district court, and would, instead remand for the reasons indicated.