**NOT RECOMMENDED FOR PUBLICATION**
**File Name:  18a0154n.06**

**No. 17-3571**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| VANESSA ENOCH; AVERY CORBIN, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| DEPUTY SHERIFF HOGAN; DEPUTY SHERIFF | ) | UNITED STATES DISTRICT |
| NOBLES, Badge No. 1266, | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| Defendants-Appellants, | ) | |
| | ) | OPINION |
| HAMILTON COUNTY SHERIFF'S OFFICE; JIM | ) | |
| NEIL, County Sheriff, | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**
Mar 23, 2018
DEBORAH S. HUNT, Clerk

**BEFORE:**     **GILMAN, SUTTON, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.**  This interlocutory appeal of an order denying qualified immunity to Deputy Sheriffs Hogan and Nobles arises from the denial of their Rule 12(c) motion for judgment on the pleadings.  The complaint filed by Vanessa Enoch and Avery Corbin alleges that they were taking photographs and making video recordings at an impromptu press conference in a courthouse hallway when Defendants violated their clearly established constitutional rights by stopping, searching, and arresting them based on their race.  Accepting as true the factual allegations in their complaint, Enoch and Corbin have plausibly alleged violations of their clearly established First and Fourth Amendment rights.  We therefore

AFFIRM the decision of the district court to deny qualified immunity to the Deputies at this stage of the case.

## I.     BACKGROUND

The following facts are alleged in the operative complaint, Plaintiffs' First Amended Complaint.  In June 2014, Vanessa Enoch and Avery Corbin attended a pretrial hearing at the Hamilton County Courthouse in the case of *State v. Hunter*, the criminal prosecution of a local judge.  Enoch was researching and reporting on the case for a small local paper; Corbin had a personal interest in the proceedings because he had previously worked with Judge Hunter as a bailiff.  The Complaint does not allege that the Plaintiffs knew one another or that they interacted during or after the hearing.  The hearing also attracted other members of the press and public.

After the hearing ended, Enoch and Corbin allege that they left the courtroom and went into the hallway, where approximately twenty people gathered to record "an 'impromptu' press conference."  They joined this group, using their mobile devices to "take[e] snapshots and otherwise record[] Judge Tracie Hunter, and her lawyer, and events occurring in the public hallway."

According to the Complaint, the Deputy Sheriffs Hogan and Nobles singled Enoch and Corbin out from the group in the hallway "in substantial part" because of their race.  When Enoch left to locate a restroom, one or both of the Deputies stopped her, demanded the password for her iPad under threat of arrest, searched it, and shortly thereafter forcibly handcuffed and arrested her.  The Deputies also ordered Corbin to cease recording under threat of arrest, searched his iPad, and forcibly handcuffed and arrested him.  Of the entire group in the hallway, only Enoch and Corbin, both of whom are black, were treated this way.  The Complaint declares that "[n]one of the estimated 16–18 white individuals in the hallway using their news cameras,

cell phones or other electronic recording devices were stopped, detained, searched, handcuffed and arrested by Defendants nor did any of them have their mobile devices searched or seized."

The Complaint alleges that, as the Deputies took Enoch to the sheriff's office, they told her "that they did not know at that time" why she was being arrested and that "they would figure it out when they got downstairs to the office." Enoch and Corbin were detained in the sheriff's office for almost ninety minutes, uncomfortably handcuffed in a manner that caused significant pain. Enoch's repeated requests to use a restroom were denied.

According to the Complaint, Deputies Hogan and Nobles then charged Enoch with disorderly conduct under Ohio Rev. Code § 2917.11, stating in the citation that she yelled at a deputy while court was in session and that she refused to identify herself when asked. Approximately five days later, Enoch was served with a second citation, in which the Deputies charged her with failing to disclose information under Ohio Rev. Code § 2921.29, on the basis that she had refused to identify herself. The Deputies also charged Corbin with disorderly conduct under § 2917.11. Enoch and Corbin aver that the allegations in all three citations were false. All charges were subsequently dismissed. Enoch alleges that she lost her job as a result of being arrested and charged.

Enoch and Corbin filed this § 1983 suit against Deputies Hogan and Nobles, the Hamilton County Sheriff's Office, and County Sheriff Jim Neil, along with four other employees of the Sheriff's Office who have since been dismissed from the case. The Complaint alleges violations of the Plaintiffs' constitutional rights under the First and Fourth Amendments, as incorporated through the Fourteenth Amendment, as well as of state tort law. The Defendants filed a motion for judgment on the pleadings under Rule 12(c), claiming qualified immunity among other defenses. The district court concluded that the Defendants were not entitled to

qualified immunity as a matter of law at this stage of the case. Deputy Sheriffs Hogan and Nobles appealed.

## II. ANALYSIS

### A. Jurisdiction

Although appellate courts may generally review only "final decisions" of district courts, 28 U.S.C. § 1291, we recognize an exception to this rule for orders denying qualified immunity. Though such denials do not conclude proceedings in the district court, they are nonetheless immediately appealable. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). "[T]his exception is a narrow one. A denial of a claim of qualified immunity is immediately appealable only if the appeal is premised not on a factual dispute, but rather on 'neat abstract issues of law.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Johnson v. Jones*, 515 U.S. 304, 317 (1995)). Such an abstract legal issue is generally presented when the parties' only dispute on appeal is "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *Mitchell*, 472 U.S. at 528.

As a preliminary matter, Enoch and Corbin argue that we lack jurisdiction over this appeal because the Deputies' arguments turn on disputed facts. *See Johnson*, 515 U.S. at 319–20; *McKenna v. City of Royal Oak*, 469 F.3d 559, 561 (6th Cir. 2006). They rely on qualified immunity cases arising at the summary judgment stage. "Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015)). In this case, the Deputies raised qualified immunity in their motion for judgment on the pleadings under Rule 12(c).

We review a judgment on the pleadings "using the same de novo standard of review employed for a motion to dismiss under Rule 12(b)(6)." *Tucker v. Middleburg-Legacy Place, L.L.C.*, 539 F.3d 545, 549 (6th Cir. 2008). In conducting our review, we accept the opposing party's factual allegations and draw all reasonable inferences in their favor, "[b]ut we 'need not accept as true legal conclusions or unwarranted factual inferences.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)); *see also Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (synthesizing the requirements laid out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), regarding survival of a motion to dismiss under Rule 12(b)(6)). Judgment on the pleadings should be granted only if, subject to these conditions, "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Tucker*, 539 F.3d at 549 (quoting *JPMorgan Chase Bank*, 510 F.3d at 582).

Because "there cannot be any disputed questions of fact" in our review of this Rule 12(c) motion and, at this stage, "our review solely involves applying principles of law to a given and assumed set of facts," this case falls outside the parameters of *Johnson*, and we may properly exercise jurisdiction. *Barnes v. Winchell*, 105 F.3d 1111, 1114 (6th Cir. 1997). We therefore turn to the substance of Defendants' qualified immunity arguments.

### B.     Qualified Immunity

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Boler v. Earley*, 865 F.3d 391, 416 (6th Cir. 2017) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). To defeat a claim of qualified immunity, the plaintiff must show (1) that the official's conduct

violated a constitutional right, and (2) that the right was clearly established at the time of the violation. *Id.* Combining the test for qualified immunity with the standard for a 12(c) motion, the Deputies are entitled to qualified immunity if, accepting all the factual allegations in the Complaint as true and drawing all reasonable inferences in Plaintiffs' favor, Enoch and Corbin have not plausibly alleged that the Deputies' actions violated their clearly established First and Fourth Amendment rights.

The factual allegations in the Complaint boil down to this: Plaintiffs Enoch and Corbin, both of whom are black, joined a sizable group of people recording newsworthy events in a courthouse hallway. No rule forbade them from doing so. Deputies Hogan and Nobles, "apparently motivated in substantial part by race," singled out Enoch and Corbin, searched their belongings, and forcibly arrested them. None of the white individuals who were recording the same events in the same group were treated similarly. During transit to the County Sheriff's Office, the Deputies admitted to Enoch that they "did not know" why she was being arrested. They then issued citations to both Enoch and Corbin, falsely alleging violations of two Ohio laws.

### 1. Fourth Amendment

We consider first whether Enoch and Corbin have plausibly alleged a violation of their clearly established Fourth Amendment rights with regard to their claims of unreasonable search and seizure, false arrest, and malicious prosecution.

The Deputy Sheriffs raise only one defense to all of these claims—that they were enforcing a courthouse rule. According to the Deputies, Enoch and Corbin violated Local Rule 33(D)(6) of the Hamilton County Court of Common Pleas by recording in the courthouse

hallway without having previously secured permission to do so.[1]   The Deputies argue that because they were entitled to take action upon witnessing a violation of courthouse rules, the searches, arrests, and prosecutions were all lawful and constitutional.

Because Local Rule 33(D)(6) is not mentioned in the Complaint, we may consider this additional argument only to the extent that it challenges the Complaint's "legal conclusions or unwarranted factual inferences." *See JPMorgan Chase Bank*, 510 F.3d at 582 (quoting *Mixon*, 193 F.3d at 400).   By its text, Local Rule 33(D)(6) prohibits recording "in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole

---

[1] The Hamilton County Court of Common Pleas Local Rule 33(D)(6), titled "Cell Phones, Cameras, Pagers, Laptop Computers, and Other Electronic Devices," is available at https://hamiltoncountycourts.org/index.php/common-pleas-local-rule-33.  The rule provides, in its entirety:

> a.   Unless otherwise permitted in accordance with Rule 30 of these Local Rules, the operation of any cellular or portable telephone, camera (still or video), pager, beeper, computer, radio, or other sound or image recording or transmission device is prohibited in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court. All such devices must be turned off in the above-listed areas at all times.
>
> b.   Duly licensed attorneys and their paralegals/assistants appearing in court, courthouse employees, public safety officers, authorized contractors and vendors, court staff, and any others authorized by the Court are exempt from the prohibition set forth above unless ordered by the Court.
>
> c.   Any person or persons violating this Rule are subject to sanctions for contempt and or criminal prosecution, and may be ejected from any restricted area described above or from the courthouse, and any item or device operated in violation of this Rule may be confiscated by court staff or courthouse security personnel and held until the offending person(s) leave(s) the courthouse. In no event shall the Court or any court or security personnel be liable for damage to any device confiscated and/or held in accordance with this Rule.

The cross-referenced Rule 30, titled "Media Coverage of Court Proceedings," is available at https://hamiltoncountycourts.org/index.php/common-pleas-local-rule-30.  Subsection (A) provides:

> Requests for permission to broadcast, televise, photograph, or otherwise record proceedings in the courtroom shall be made in writing to the Judge or the Judge's designated courtroom employee. Such a request shall be made on the appropriate application form available through the Court Administrator. Such applications should be made as far in advance as is reasonably possible but in no event later than 30 minutes prior to the courtroom session to be recorded. The Judge involved may waive the advance notice provision for good cause. All applications shall become part of the record of the proceedings.

The remaining subsections of Rule 30 are not relevant to this case.  They cover the judge's response to recording requests; arrangements to pool resources, including by sharing a single video camera and using the court's audio system; and specific prohibitions on filming confidential communications, objecting witnesses, and jurors.

discretion of the Court) without the express permission of the Court." The scope of Rule 33 does not present a purely legal question because the text of the rule is not dispositive. The enumerated list of covered areas does not include hallways, nor are hallways necessarily an "ancillary area." The invocation of "the sole discretion of the Court" further muddies the waters because it appears that judges must make periodic determinations as to what constitutes an ancillary area— and perhaps, as the magistrate judge tentatively opined, as to what constitutes any of the areas in the list. Whether such judicial determinations were made and what areas of the courthouse they covered at what times are factual, not legal, questions. Enoch and Corbin plausibly alleged the relevant factual information by stating in their Complaint that "[d]uring that pretrial hearing, the presiding judge specifically restricted all court attendees from using their electronic devices inside the courtroom during the official court proceedings. At that time, the presiding judge issued no such prohibition as to use of electronic devices in the hallways of the courthouse."

We must accept Enoch and Corbin's factual allegation as true. *JPMorgan Chase Bank*, 510 F.3d at 581. Our Fourth Amendment analysis proceeds on the assumption that Enoch and Corbin were searched, arrested, and prosecuted because of their race and despite violating neither Local Rule 33(D)(6) nor the Ohio statutes referenced in their citations.

We analyze the Deputies' interactions with Enoch and Corbin under the standard for brief, investigative stops that was laid out in *Terry v. Ohio*, 392 U.S. 1 (1968). The *Terry* standard, however, does not govern the entirety of the interactions. Even assuming for the sake of argument that the initial stops of Enoch and Corbin were brief and investigative in nature, probable cause was required for the arrests and prosecutions that followed those stops. *See Sykes v. Anderson*, 625 F.3d 294, 305, 308 (6th Cir. 2010). *Terry* is nonetheless a useful beginning point for our analysis because the level of suspicion required for a *Terry* stop is "'obviously less'

than is necessary for probable cause." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Thus, if the Deputies cannot satisfy the *Terry* standard, they necessarily cannot satisfy the probable cause standard that governs the remainder of their actions.

To make an investigative stop under *Terry*, a law enforcement officer must have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). The Complaint alleges that the Deputies stopped and searched Enoch and Corbin because of their race and despite the fact that their behavior was entirely lawful. It has been the law of this circuit for decades that "the reasonable suspicion requirement for an investigative detention cannot be satisfied when the sole factor grounding the suspicion is race." *United States v. Avery*, 137 F.3d 343, 354 (6th Cir. 1997). Enoch and Corbin therefore plausibly allege that they were victims of an unconstitutional search and seizure.

Because individualized suspicion is less demanding than probable cause, *see Navarette*, 134 S. Ct. at 1687, the same race-related facts necessarily do not satisfy the higher probable cause standard. As a general matter, arrest and prosecution without probable cause are unconstitutional. *See Sykes*, 625 F.3d at 305, 308 (explaining that a false arrest claim lies only if "the arresting officer lacked probable cause to arrest the plaintiff" and that the requisite constitutional violation underlying a malicious prosecution claim is "a lack of probable cause for the criminal prosecution"). The Deputies' only response on this point is that they had probable cause to believe that Enoch and Corbin were violating Local Rule 33(D)(6), a new factual allegation that we disregard for the reasons already explained. The Deputies do not advance any other arguments as to why the facts alleged do not suffice to establish the requisite elements of

Enoch and Corbin's claims. Enoch and Corbin therefore have plausibly alleged violations of their Fourth Amendment rights.

Those rights were clearly established. "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007)). As of June 2014, the published precedent of this court made clear that an officer may not stop, much less arrest and prosecute, an individual on the basis of her race. We held in *United States v. Johnson*, 620 F.3d 685, 688 n.1, 692–96 (6th Cir. 2010), and again in *United States v. Beauchamp*, 659 F.3d 560, 564, 570–71 (6th Cir. 2011), that officers did not have the requisite reasonable suspicion to conduct an investigative stop of black men who (among other factors) were out late at night in high-crime areas and attempted to avoid interactions with police officers. In the situation at hand, the Deputies had even less reason to suspect Enoch and Corbin of criminal activity. On the facts alleged, there was nothing suspicious about the time, location, or nature of their actions.

Enoch and Corbin have plausibly alleged violations of their clearly established Fourth Amendment rights. The Deputies are not entitled to qualified immunity as a matter of law on these counts of the Complaint.

2. First Amendment

Enoch and Corbin also claim that the Deputies unconstitutionally infringed upon their First Amendment free speech rights. Plaintiffs alleged that they were part of a group of media members and private individuals recording events of public importance—an "'impromptu' press conference" held by the attorney representing a local judge in criminal proceedings. Enoch is herself a member of the press.

The Deputies raise two defenses to this claimed constitutional violation. First, they argue again that they were enforcing courthouse rules. As explained, we disregard this new factual allegation at this stage of the litigation and accept Enoch and Corbin's allegation that they had violated no rule or law. Second, the Deputies argue that there is no clearly established First Amendment right to record. But that issue is not dispositive in this case. We have long and clearly held that newsgathering "qualif[ies] for First Amendment protection." *Boddie v. Am. Broad. Cos.*, 881 F.2d 267, 271 (6th Cir. 1989) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972)). "[W]ithout some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg*, 408 U.S. at 681. And while trial-related newsgathering may be subjected to reasonable restrictions and limitations, *see Richmond Newspapers v. Virginia*, 448 U.S. 555, 581 n.18 (1980), this case must proceed under the assumption that no rule was violated here. The Deputies could not constitutionally prevent Enoch and Corbin from or punish them for gathering news about matters of public importance when their actions violated neither rules nor laws. Enoch and Corbin have therefore plausibly alleged a violation of their First Amendment rights.

Those rights were clearly established. Decades ago, the Supreme Court established with clarity that the First Amendment protects the rights of both the media and the general public to attend and share information about the conduct of trials, "where their presence historically has been thought to enhance the integrity and quality of what takes place." *Id.* at 578. The Court linked the right of access to another fundamental First Amendment right, explaining that "[t]he explicit, guaranteed rights to speak and to publish concerning what takes place at a trial would lose much meaning if access to observe the trial could, as it was here, be foreclosed arbitrarily." *Id.* at 576–77. The same logic necessitates finding a constitutional violation in this case, where

Enoch and Corbin's access to a press conference held immediately after a hearing was foreclosed on the basis of their race.

The Supreme Court has likewise been clear for more than fifty years that state officials may not enforce rules or regulations that implicate First Amendment rights in a racially discriminatory manner. In a case involving two black protestors who refused to leave a segregated library, the Supreme Court explained:

> A State or its instrumentality may, of course, regulate the use of its libraries or other public facilities. But it must do so in a reasonable and nondiscriminatory manner, equally applicable to all and administered with equality to all. . . . [I]t may not invoke regulations as to use—whether they are *ad hoc* or general—as a pretext for pursuing those engaged in lawful, constitutionally protected exercise of their fundamental rights.

*Brown v. Louisiana*, 383 U.S. 131, 143 (1966). Here too, on the facts alleged, state officials purported to enforce state law in a racially discriminatory manner, stopping and arresting black citizens for engaging in behavior that was both protected by the First Amendment and permitted for their white counterparts.

Based on the Complaint, the Deputy Sheriffs violated Enoch and Corbin's clearly established First Amendment rights. The Deputies are therefore not entitled to qualified immunity as a matter of law on this count of the Complaint.

### III.    CONCLUSION

Enoch and Corbin have plausibly alleged violations of their clearly established First and Fourth Amendment rights. We therefore **AFFIRM** the district court's denial of qualified immunity and **REMAND** the case to the district court for further proceedings consistent with this opinion.